JEFFREY N. LABOVITCH (SBN: 221934)
jlabovitch@nicolaidesllp.com
CHRIS J. MIDDLETON (SBN: 258331)
cmiddleton@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
4365 Executive Drive, Suite 950
San Diego, CA 92121
Telephone:   (858) 257-0700
Facsimile:    (858) 257-0701

MATTHEW J. FINK (*admitted pro hac vice*)
mfink@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S. Wacker Street, Suite 2100
Chicago, IL 60606
Telephone:   (312) 585-1400
Facsimile:    (312) 585-1401

Attorneys for Defendant and Third-Party Plaintiff
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOME DEPOT, U.S.A., INC.<br><br>Plaintiff,<br><br>v.<br><br>TWIN CITY FIRE INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-03051-DDP-JCx<br><br>**DISCOVERY MATTER**<br>**JOINT STIPULATION REGARDING NATIONAL UNION'S MOTION TO COMPEL HOME DEPOT'S FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE**<br><br>**Accompanying Documents:**<br>Notice of Motion; Declaration of Jeffrey N. Labovitch; Declaration of Joshua S. Goodman |

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, <br><br>           Third-Party Plaintiff, <br><br> v. <br><br> STEADFAST INSURANCE COMPANY, <br><br>           Third-Party Defendants. | Date:       September 17, 2019 <br> Time:       9:30 a.m. <br> Location:   Courtroom 750 <br>               255 East Tempe St. <br>               Los Angeles, CA 90012 <br> Judge:      Jacqueline Chooljian <br><br> Complaint Filed: April 11, 2018 <br> Answer Filed:   May 31, 2018 <br> Fact Discovery <br> Cut Off:       October 30, 2019 <br> Pretrial <br> Conference:    March 2, 2020 <br> Trial Date:     March 17, 2020 |

# **TABLE OF CONTENTS**

I.  INTRODUCTORY STATEMENT ......................................................6

    A.  National Union's Introductory Statement ..................................6

        1.  Home Depot's Late Tender of the Underlying Angle Lawsuit................................................................................6

        2.  Home Depot's Selective Waiver and Refusal to Produce Related Defense Counsel Communications ......................7

    B.  Home Depot's Introductory Statement......................................9

II.  DISCOVERY REQUESTS AND RESPONSES ..............................10

    A.  Document Requests at Issue .................................................10

    B.  National Union's Position.......................................................13

        1.  Factual and Procedural and Background ..........................13

        2.  Relevant Law Regarding Waiver of the Attorney-Client Privilege and Work Product Doctrine .................................16

        3.  Home Depot Must Produce All Defense Counsel Communications Related to Case Value ..........................17

            i.  Home Depot Cannot Withhold Defense Counsel Communications Related to Case Value it Perceives as Unfavorable ............................................................18

            ii.  Post-Tender Communications Are Also Related to Case Value .....................................................................20

        4.  *In-Camera* Review of Defense Counsel's Complete Files is Appropriate ..................................................................21

    C.  Home Depot's Position ..........................................................22

        1.  Factual and Procedural Background ..................................22

        2.  The Scope of the Waiver is "Narrowly Defined" ...............26

        3.  Post-Notice Communications Fall Outside The Waiver ....31

       4.  National Union's Case Law Is Inapposite..........................33

       5.  *In Camera* Review Is Not Justified ....................................34

III.    CONCLUSION .................................................................35

    A.    National Union's Conclusion..........................................35

    B.    Home Depot's Conclusion ......................................36

1   Pursuant to Federal Rules of Civil Procedure Rule 37(a) and Central
2   District Local Rule 37-2, Defendant National Union Fire Insurance
3   Company of Pittsburg, PA ("National Union") and Plaintiff Home Depot,
4   U.S.A., Inc. ("Home Depot") submit the following Joint Stipulation with
5   respect to National Union's Motion for to Compel Further Responses to
6   Request for Production of Documents, Set One, as to Request Nos. 8-11.
7   On August 5, 2019, pursuant to Local Rule 37-1, counsel for
8   National Union sent an email to counsel for Home Depot seeking to meet
9   and confer regarding Home Depot's decision to waive the attorney-client
10  privilege and work product doctrine as to these specific defense counsel
11  communications. (Declaration of Jeffrey N. Labovitch ("Labovitch Decl."), ¶
12  11, Ex. B.) National Union cited various legal authorities for its position.
13  (*Id*., Ex. B, p. 4-6.) Counsel met and conferred in person on August 6 and
14  7. (*Id*., ¶ 12.) On August 8 and 9, counsel for National Union and Home
15  Depot exchanged additional meet and confer emails, spoke by phone, and
16  clarified their respective positions regarding the scope of Home Depot's
17  waiver and the production of additional documents as it relates to Request
18  Nos. 8-11. (*Id*., ¶ 15-18, Ex. B.)
19  Notwithstanding both parties' good faith meet and confer efforts, the
20  parties have been unable to resolve their disputes regarding National
21  Union's Request Nos. 8-11. (*Id*., ¶ 19.) The parties disagree regarding the
22  scope of Home Depot's waiver of the attorney-client privilege and work
23  product doctrine. (*Id*., ¶ 20.) National Union respectfully moves this Court
24  to enter an order compelling Home Depot to further respond to Request
25  Nos. 8-11 ("Motion") by producing all defense counsel communications
26  with Home Depot related to the value of the underlying case. National
27  Union also requests an *in-camera* review of all communications from
28  Home Depot's defense counsel in the underlying lawsuit for a

determination by the Court of which communications fall within the privilege waiver.

Pursuant to Local Rule 37-2.1, attached hereto as Exhibit A is a copy of the August 19, 2019 order modifying scheduling order (ECF 45).

## I.   INTRODUCTORY STATEMENT

### A.   National Union's Introductory Statement

For over two years—during the underlying lawsuit and during this insurance coverage lawsuit—Home Depot aggressively asserted the attorney-client privilege and work-product doctrine as to its communications with its defense counsel in the underlying lawsuit and refused to provide these communications to National Union.  At 2:59 p.m. on August 2, 2019, the Friday before Home Depot's 30(b)(6) deposition on Monday August 5, Home Depot reversed course at the eleventh hour by announcing it was "waiving the attorney-client and attorney work product privileges", but only as to two specific, hand-picked defense counsel reports that, in part, address the value of the underlying case to use affirmatively against National Union.  Notwithstanding the outrageous timing of Home Depot's selective waiver, National Union is now entitled to all defense counsel communications sent to or from Home Depot that relate to or otherwise concern Home Depot's ability to determine the value of the underlying lawsuit, which are now essential for a fair adjudication of this coverage action.  Because Home Depot cannot use the attorney-client privilege as both a sword and a shield, it must produce all defense counsel reports from the underlying lawsuit.

1. <u>Home Depot's Late Tender of the Underlying Angle Lawsuit</u>

As described in more detail in National Union's Motion for Protective Order (ECF 39-1, pp. 6-7), on or about November 4, 2015, Cheyenne Angle ("Angle") filed a lawsuit against Home Depot in Riverside County

Superior Court, Case No. RIC1513159 ("Angle Lawsuit").  In the Angle

Lawsuit, plaintiff Angle alleged he was injured on or about November 11,

2013 by an electric shock while examining a Victor Electronic Rat Trap,

Model m240 ("Rat Trap") in a Home Depot store located in Corona, CA.

At this time, the supplier of the Rat Trap, Woodstream Corporation, was

insured through a primary insurance policy issued by Twin City Fire

Insurance Company ("Twin City Policy") and an umbrella policy issued by

National Union ("National Union Policy").

On or about May 16, 2017, Home Depot tendered its defense and

indemnity to Twin City as an additional insured.  Two days later, Home

Depot tendered its defense and indemnity to National Union as an

additional insured.  At that time, mediation was scheduled for May 22,

2017, with trial four days later.  The Angle Lawsuit did not settle and the

parties agreed to a "high-low" binding arbitration, effectively resulting in a

verdict for Angle at the "high" amount (the "Award").  Home Depot

demanded that Twin City and National Union pay the Award, but the

insurers declined.  In addition to other coverage defenses, National Union

asserted that Home Depot breached the National Union Policy's notice

condition.  Home Depot subsequently filed the instant coverage action.

2. Home Depot's Selective Waiver and Refusal to Produce
Related Defense Counsel Communications

As detailed below, Home Depot has continually asserted the

attorney-client privilege and work product doctrine with respect to defense

counsel communications exchanged during the Angle Lawsuit, until one

business day before Home Depot's 30(b)(6) deposition.

National Union served a Request for Production of Documents, Set

One, on Home Depot on December 9, 2018 seeking (1) the complete files

of Home Depot's defense counsel in the Angle Lawsuit (request nos. 8-9)

1  and (2) all correspondence between Home Depot and both its defense

2  counsel (request nos. 10-11).  The information sought is essential to

3  National Union's late-notice defense because it is probative of the

4  reasonableness of Home Depot's failure to notify National Union of the

5  Angle Lawsuit until one week before trial.  Home Depot objected to these

6  requests based on attorney-client privilege and work product doctrine and

7  refused to produce any communications with defense counsel, instead

8  producing only limited, non-privileged parts of its defense counsel files.

9  Then, on August 2, 2019, less than a month before the August 30

10 fact discovery cut-off and just one business day before the scheduled

11 deposition of Home Depot's 30(b)(6) deposition, Home Depot decided to

12 produce two defense counsel reports so that it can rely on otherwise

13 privileged communications for its own benefit.  Specifically, as a counter-

14 argument to National Union's late-notice defense, Home Depot seeks to

15 rely on two letters that include its defense counsel's valuation of the case

16 to argue its late-notice to National Union of the Angle Lawsuit was

17 otherwise reasonable.  As required by relevant case law, Home Depot

18 cannot selectively waive the privilege so as to benefit its case, and after

19 producing these two reports has now waived the privilege for all

20 communications that relate to and can be used as counter evidence

21 regarding the value of the case.  Equity requires that Home Depot

22 produce all defense counsel communications that relate to, or otherwise

23 concern, the issue of determining case value in the Angle Lawsuit, which

24 likely includes most, if not all, communications between Home Depot and

25 its defense counsel throughout the course of the Angle Lawsuit.

26 In this Motion, National Union seeks an order compelling Home

27 Depot to further respond to Request Nos. 8-11 by producing all defense

28 counsel communications with Home Depot related to or probative of

determining the value of the Angle Lawsuit on the grounds that (1) Home Depot intentionally waived its attorney-client privilege and work product doctrine as to the issue of determining case value, and (2) all related communications are essential for a fair adjudication of this coverage action.  National Union also requests an *in camera* review by the Court.

**B.     Home Depot's Introductory Statement**

This is a coverage action filed by an additional insured (Home Depot) against an excess insurance carrier (National Union) for its refusal to indemnify Home Depot in a personal injury action filed by a customer who was allegedly injured by an electronic rat trap on display at a Home Depot store. The rat trap was manufactured by Woodstream Corporation, National Union's named insured. On May 18, 2017, prior to the trial date of the underlying action (which ultimately went to arbitration in November 2017), and shortly after Home Depot received information indicating that the amount in controversy was reasonably likely to exceed the $1 million limits of the Woodstream's primary insurance policy, Home Depot provided notice to National Union of the Angle Lawsuit.

National Union refused to contribute towards a potential settlement of the lawsuit and later refused to pay its portion of the arbitration award of $9 million, disclaiming coverage for the claim. Among other things, National Union argued that coverage was not available under its policy because Home Depot failed to provide timely notice of the claim to National Union pursuant to the notice provision of its policy. The notice provision requires the insured to notify National Union "as soon as practicable" "[i]f a claim is made or Suit is brought against any Insured which is reasonably likely to involve" the National Union Policy, which in this case would be when the damages in the Angle Lawsuit were reasonably likely to exceed the $1 million limit of the underlying Twin City

policy. National Union has raised this defense, known as the late notice defense, in this coverage action.

In this action and during the pendency of the underlying action, National Union sought the evaluations of Home Depot's defense counsel, which Home Depot denied, asserting the privileges afforded to it pursuant to the attorney-client privilege and work product doctrine.

However, on August 2, 2019, Home Depot decided to waive its privileges with respect to two case evaluation reports it received from defense counsel and produce them for the limited purpose of establishing that the reports Home Depot received from its defense counsel did not indicate that the damages at issue in the Angle Lawsuit were reasonably likely to exceed $1 million.

Home Depot's efforts to eliminate any potential prejudice to National Union, including agreeing to modify the scheduling order to continue all dates by approximately 2 months, are set forth in detail below. In addition, Home Depot's extensive meet and confer efforts, and offers to produce additional documents as a way of resolving this dispute are also set forth below. Finally, and as also discussed below, National Union now has all the communications from Home Depot's defense counsel (predating notification to National Union) that state or describe the value of the Angle Lawsuit.

**II.    DISCOVERY REQUESTS AND RESPONSES**

**A.    Document Requests at Issue**

The following is the text of National Union's Request for Production of Documents, Set One, to Home Depot, Request Nos. 8-11, as well as Home Depot's response to same, which are the subject of this Motion:

/ / /

/ / /

**REQUEST FOR PRODUCTION NO. 8**

All DOCUMENTS constituting the complete file of McCune & Harber, LLP as defense counsel for HOME DEPOT in the ANGLE LAWSUIT and ARBITRATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Plaintiff objects to this request on the ground it seeks information protected from disclosure pursuant to the attorney-client privilege and work product doctrine. Plaintiff further objects to this request on the ground it is overly broad and would result in the production of documents that are neither relevant to the subject matter nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent it seeks confidential and/or proprietary information. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff will comply with this request and produce the portions of the file of McCune & Harber, LLP that is not protected from disclosure pursuant to the attorney-client privilege or work product doctrine. Portions of this file are confidential and proprietary and subject to the Stipulated Protective Order and will be produced once the Stipulated Protective Order is entered in this case.

**REQUEST FOR PRODUCTION NO. 9**

All DOCUMENTS constituting the complete file of Lewis Brisbois as defense counsel for HOME DEPOT in the ANGLE LAWSUIT and ARBITRATION.

/ / /

/ / /

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiff objects to this request on the ground it seeks information protected from disclosure pursuant to the attorney-client privilege and work product doctrine. Plaintiff further objects to this request on the ground that it is overly broad and would result in the production of documents that are neither relevant to the subject matter nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent it seeks confidential and/or proprietary information. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff will comply with this request and produce the portions of the file of Lewis Brisbois that are not protected from disclosure pursuant to the attorney-client privilege or work product doctrine. Portions of this file are confidential and proprietary and subject to the Stipulated Protective Order and will be produced once the Stipulated Protective Order is entered in this case.

**REQUEST FOR PRODUCTION NO. 10**

All DOCUMENTS constituting correspondence between HOME DEPOT and McCune & Harber RELATING TO the ANGLE LAWSUIT and ARBITRATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Plaintiff objects to this request on the ground it seeks information protected from disclosure pursuant to the attorney-client privilege and/or work product doctrine.

/ / /

/ / /

**REQUEST FOR PRODUCTION NO. 11**

All DOCUMENTS constituting correspondence between HOME DEPOT and Lewis Brisbois RELATING TO the ANGLE LAWSUIT and ARBITRATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiff objects to this request on the ground it seeks information protected from disclosure pursuant to the attorney-client privilege and/or work product doctrine.

**B.   National Union's Position**

1.   Factual and Procedural and Background

Since National Union was first put on notice of the Angle Lawsuit on May 18, 2017, days before trial was scheduled to begin, Home Depot consistently refused to provide National Union with defense counsel communications and work product, shielding these documents based on the attorney-client privilege and work product doctrine. In a July 3, 2017 letter to National Union, Home Depot stated "there are no non-privileged portions of defense counsel reports and evaluations to send to you." (Labovitch Decl., ¶ 2.)

On October 9, 2018, National Union served its Request for Production of Documents, Set One, to Home Depot, seeking, in relevant part, the complete file of McCune & Harber, LLP and Lewis Brisbois as defense counsel to Home Depot in the Angle Lawsuit (request nos. 8-9), including all communications between Home Depot and National Union (request nos. 10-11).  In responses served December 6, 2018, Home Depot objected to Request Nos. 8-11 and continued to assert the attorney-client privilege and work product protection.  Home Depot agreed to produce only "the portions of the file of [both defense counsel] that are not protected from disclosure pursuant to the attorney-client privilege or

1 | work product doctrine."  Home Depot refused to produce any defense
2 | counsel reports or communications regarding case value. (Labovitch
3 | Decl., ¶ 3.)

4 |      National Union notified all counsel on June 12, 2019 that it would
5 | take Home Depot's 30(b)(6) deposition ("Notice") (Labovitch Decl., ¶ 4.)
6 | Based on Home Depot's prior assertions, National Union purposefully
7 | avoided noticing deposition topics that could invade the attorney-client
8 | privilege or work product doctrine that Home Depot was so clearly
9 | asserting applied to communications with its defense counsel. (Labovitch
10 | Decl., ¶ 4.)  Nevertheless, Home Depot met and conferred on several
11 | topics that it believed would implicate privileged communications and
12 | protected work product. (Labovitch Decl., ¶ 5.)  As a result of Home
13 | Depot's continued assertion of the attorney-client privilege and/or work
14 | product doctrine, National Union removed topic no. 16 from its deposition
15 | notice, which had sought Home Depot's knowledge and understanding of
16 | its defense to the product liability and negligence claims in the Angle
17 | Lawsuit. (Labovitch Decl., ¶ 5.)

18 |      During a meet and confer telephone call on or about June 28, 2019
19 | regarding the scope of deposition topics for Home Depot's 30(b)(6)
20 | deposition, Home Depot asserted that no defense counsel reports should
21 | have been produced and requested that National Union immediately
22 | notify Home Depot if any had been produced. (Labovitch Decl., ¶ 6.)

23 |      On July 25, 2019, counsel for National Union notified Home Depot
24 | that it discovered it was in possession of two defense counsel reports,
25 | ostensibly prepared by Lewis Brisbois, that had been provided by Twin
26 | City to National Union in May 2017, unbeknownst to Home Depot.
27 | (Labovitch Decl., ¶ 7.)  National Union asked for Home Depot's position
28 |

1  on the reports, which counsel for Home Depot indicated would be

2  forthcoming. (Labovitch Decl., ¶ 7.)

3      On the afternoon of Friday August 2, 2019, the last business day

4  before its deposition, Home Depot abruptly changed its position that it had

5  taken consistently over the past two years and waived the attorney-client

6  privilege and work product doctrine as to "the case evaluation reports

7  prepared by defense counsel McCune & Harber" by producing two

8  reports, dated October 19, 2016 and April 5, 2017, respectively.

9  (Labovitch Decl., ¶ 7, Ex. A.)  On August 9, Home Depot provided a

10  description of the issue for which the waiver applied: "Communications

11  from defense counsel to Home Depot reflecting whether or when, prior to

12  May 18, 2017, the Angle lawsuit was reasonably likely to have a value of

13  more than $1M." (Labovitch Decl., Ex. B, p. 1.)  Home Depot also

14  acknowledged that "defense counsel describing the settlement value,

15  verdict range, or value of the case, either quantitatively (i.e., with

16  numbers) or qualitatively (i.e., with descriptions as to the value) would fall

17  within the scope of the waiver." (*Id*., Ex. B, p. 2.)  However, Home Depot

18  asserted that "[c]ommunications about case strategy or case handling that

19  do not contain anything about the case value would not." (*Id*.)  As an

20  example, Home Depot stated that "discussions leading up to" the

21  demurrer filed in the Angle Lawsuit are not included in the waiver. (*Id*.)

22      On August 7, 2019, counsel for Home Depot indicated it would

23  waive the attorney-client privilege and work product doctrine with respect

24  to the two Lewis Brisbois reports produced by Twin City.  (Labovitch

25  Decl., ¶ 14, Ex. C, p. 2.)

26      As described below, National Union does not accept Home Depot's

27  arbitrary line-drawing of what it contends relates to or is probative of

28  determining the value of the Angle Lawsuit.  Clearly Home Depot has

produced only the defense counsel reports it can use in its defense of National Union's valid late-notice defense to coverage, while simultaneously asserting the attorney-client privilege and work product doctrine when convenient to its case.  National Union has met the minimal threshold for an *in camera* review of the disputed materials.

> 2.   Relevant Law Regarding Waiver of the Attorney-Client Privilege and Work Product Doctrine

When a federal court exercises diversity jurisdiction, state law governs the assertion and waiver of attorney-client privilege. Fed. R. Evid. 501; *Star Editorial, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 7 F.3d 856, 859 (9th Cir. 1993).  On the other hand, when a federal court resolves work-product doctrine disputes, diversity cases are governed by federal law.  *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992).

The attorney-client privilege can be statutorily waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone.  Cal. Evid. Code § 912.  The privilege can also be impliedly waived by placing privileged information "directly at issue" and making disclosure "essential for a fair adjudication of the action." *Southern Cal. Gas Co. v. Public Utilities Commission*, 50 Cal. 3d 31, 40 (1990); see *Merritt v. Superior Court*, 9 Cal. App. 3d 721, 724 (Ct. App. 1970) (held that plaintiff impliedly waived attorney-client privilege since he had specifically put the state of mind of his attorney at issue by alleging that the defendant's attorney had confused his attorney and impeded his attorney's ability to settle his claim).

/ / /

1
2
3
4
5
6
7

Likewise, as a qualified privilege, the work-product doctrine is not absolute, and may be waived.  *United States v. Nobles*, 422 U.S. 225, 239 (1975).  A party may waive work-product protection where it discloses otherwise protected documents to a third party and thereby enables an adversary to gain access to the information. *Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, No. C11-5200 JSC, 2012 WL 3062294, at *6 (N.D. Cal. July 26, 2012).

8
9
10
11
12
13
14
15
16
17
18

However, a party waiving the attorney-client privilege and work product doctrine for a particular issue "cannot have it both ways" by selectively waiving only part of such materials to its advantage.  *See Wellpoint Health Networks, Inc.*, 59 Cal. App. 4th at 128 (no selective waiver of attorney-client privilege); *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (no selective waiver of work-product doctrine). If a party sets forth certain information for its own benefit, it cannot assert the privilege as to related information that it does not want disclosed. *Alliance Atlantis Releasing Ltd. v. Bob Yari Productions*, No. CV 08-5526-GW (SSX), 2009 WL 10672591, at *2 (C.D. Cal. May 14, 2009) (diversity case in which privilege dispute was governed by California law).

19
20
21

Here, Home Depot seeks to withhold certain documents that are "related" to the value of the Angle Lawsuit while only producing documents it perceives as favorable to its case.

22
23

### 3. Home Depot Must Produce All Defense Counsel Communications Related to Case Value

24
25
26
27
28

National Union's Motion should be granted because Home Depot has, for its own benefit, produced certain defense counsel communications (statutorily waived) and injected into this coverage action (impliedly waived) the decisions, conclusions, and mental state of its defense counsel relative to value of the Angle Lawsuit, and now must

produce all defense counsel communications to Home Depot that are "related" to or probative of determining the case value and "essential for a fair adjudication of the action." *See Southern Cal. Gas Co.*, 50 Cal. 3d at 40; *Alliance Atlantis Releasing Ltd.*, No. CV 08-5526-GW (SSX), 2009 WL 10672591, at *2.

        *i.  Home Depot Cannot Withhold Defense Counsel Communications Related to Case Value it Perceives as Unfavorable*

As Home Depot acknowledged, it was appropriate for the waiver to include documents relating to "defense counsel describing the settlement value, verdict range, or value of the case, either quantitatively [] or qualitatively []." (Labovitch Decl., Ex. B, p. 2.)  The value of a case is determined not only by defense counsel's ultimate opinion of the settlement value or verdict range, but also defense counsel's analysis of facts, liability and damages at each step of the case.

For example, on March 17, 2016, Home Depot filed a demurrer to the products liability cause of action, arguing that "the Complaint fails to allege the Rat Trap was defectively manufactured or designed." (Labovitch Decl., Ex. D.)  In his opposition, Angle responded that "[t]his is not true" because the complaint alleged the product was defective and that Home Depot sold the product to the public. (Labovitch Decl., Ex. E.) The Court agreed, ruling that Angle's form complaint was sufficient to maintain a cause of action as to the defective design or manufacturing of the Rat Trap. (Labovitch Decl., Ex. F.)  Any communication defense counsel provided Home Depot analyzing the product defect cause of action as it relates to the demurrer, before and after the demurrer was granted, is necessarily "related" to and probative of the case value because it goes directly to whether or not Home Depot could potentially be liable for a product defect in the Angle Lawsuit.  Understanding the

1  likelihood that Home Depot would prevail on a given cause of action, at
2  any point in the case, is critical to understanding whether the case "was
3  reasonably likely to have a value of more than $1M."  Home Depot,
4  however, unsurprisingly disagrees and contends that defense counsel's
5  communications regarding the demurrer are not related to the value of the
6  Angle Lawsuit. (Labovitch Decl., Ex. B, p. 2.)
7          The two reports Home Depot produced are an insufficient
8  production of all the documents included within—and related to or
9  probative of—the value of the Angle Lawsuit. Home Depot admitted as
10 much during meet and confer discussions on August 9, 2019. (Labovitch
11 Decl., ¶ 15.)  In fact, Home Depot and National Union agreed that defense
12 counsel's analysis of deposition testimony and written discovery was
13 related to case value, and therefore should be produced. (Labovitch
14 Decl., ¶ 15.)
15         National Union acknowledges that not all communications from
16 defense counsel to Home Depot are related to case value.  Certainly,
17 non-substantive communications about scheduling depositions or defense
18 counsel bills may not be "related" to or probative of whether the case "was
19 reasonably likely to have a value of more than $1M."  However, Home
20 Depot goes so far as to assert that "[c]ommunications about case strategy
21 or case handling that do not contain anything about the case value would
22 not." (Labovitch Decl., Ex. B, p. 2.)  First, communications about "case
23 strategy" are by definition related to the value of the case.  Defense
24 Counsel's communications and opinions regarding which depositions to
25 take, what discovery to propound, what defenses to assert, or what
26 arguments to make, all relate to the value of the case.  Second,
27 communications regarding "case handling" are related to case value if the
28 communications concern substantive matters regarding liability and

damages, or are otherwise probative of how well (or poorly) Home Depot's litigation strategy is going.  As most defense counsel communications will likely relate to case value, an *in camera* hearing is needed to ensure all communications related to case value are produced.  Finally, all statements made by defense counsel that contradict his ultimate opinion on case value are probative of the case value and, therefore, National Union is entitled to these prior statements to effectively cross-examine defense counsel regarding his ultimate opinion on case value.

### ii. *Post-Tender Communications Are Also Related to Case Value*

Home Depot's waiver generally concerns communications reflecting the value of the Angle Lawsuit.  Home Depot seeks to limit production to communications before Home Depot tendered the Angle Lawsuit to National Union.  However, even post-tender communications are related because they are probative of the reasonableness of Home Depot's reliance on advice of counsel regarding case value.

As an example, in the April 5, 2017 report that Home Depot produced, defense counsel McCune & Haber "recommend[ed] settlement authority up to $100,000" but did not provide a verdict range. (Labovitch Decl., ¶ 25.)  Approximately one month later on May 8, 2017, after Home Depot retained new defense counsel, Lewis Brisbois opined that settlement was "in the $3,000,000-[$]4,000,000 range" and there was a "likely verdict value in the $4,000,000-$6,000,000 range." (Labovitch Decl., ¶ 26.)  The Angle Lawsuit was resolved through binding arbitration that resulted in an award exceeding $12,000,000, which was reduced to $9,000,000 under a "high-low" agreement.  Now, Home Depot seeks to use advice of counsel to argue it was reasonable to not provide notice to

National Union of the Angle Lawsuit until days before the scheduled trial because it was relying on its initial defense counsel's questionable valuation.  Naturally, defense counsel communications showing that Home Depot's late notice was unreasonable, *i.e.*, post-tender communications regarding case value, are probative of the reliability of defense counsel's unreasonably low case evaluation.  It would be patently unfair to National Union for Home Depot to "have it both ways" by producing only the communications regarding case value that it deems favorable. *See Wellpoint Health Networks, Inc.*, 59 Cal. App. 4th at 128.

### 4. *In*-Camera Review of Defense Counsel's Complete Files is Appropriate

To empower the Court to review the disputed materials *in camera,* National Union need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged. *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992).  Based on the foregoing, National Union has met the "minimal threshold for *in camera* review." *Id*. at 1074.  Moreover, National Union doubts Home Depot's ability to fairly determine which documents "relate" to case value.[1]

---

[1] At the August 8, 2019 deposition of Woodstream (the Rat Trap supplier), it was revealed that Home Depot had failed to produce a highly relevant email between Woodstream and Home Depot relating to the insurance portion of the supplier buying agreement between Home Depot and Woodstream. (Labovitch Decl., ¶ 28, Ex. G.) Setting aside whether there is coverage for Home Depot as an additional insured under the National Union policy for the Angle Lawsuit (which National Union strongly disputes), this email, and any other similar communications withheld, may mean that Home Depot is only entitled to a maximum of $2,000,000 of coverage instead of $8,000,000 from all of Woodstream's insurers.  This is an incredibly significant piece of evidence that was not produced in response to National Union's request for documents.  Home Depot and National Union are in the early stages of investigating this and may need assistance from the Court.

National Union therefore seeks an order compelling Home Depot to further respond to Request Nos. 8-11 by producing all defense counsel communications with Home Depot related to the value of the Angle Lawsuit. National Union also requests that the Court order Home Depot to provide the Court with the <u>complete</u> files of McCune & Harber, LLP and Lewis Brisbois relative to the Angle Lawsuit for an *in camera* review.

**C.   Home Depot's Position**

1.  <u>Factual and Procedural Background</u>

This coverage action by Home Depot, an additional insured, against National Union, an excess insurance carrier, arises out of a personal injury lawsuit filed by Cheyenne Angle ("Angle") against Home Depot on November 4, 2015 ("Angle Lawsuit"). In the underlying action, Angle alleged that he was injured on November 11, 2013 at the Corona Home Depot while examining a Model m240 Victor Electronic Rat Trap manufactured by Woodstream Corporation. Home Depot is insured as an additional insured under a policy of primary insurance issued by Twin City Fire Insurance Company ("Twin City") and a policy of excess insurance issued by National Union ("National Union Policy") to Woodstream.

The National Union Policy contains a provision requiring its insured to notify National Union "as soon as practicable" "[i]f a claim is made or Suit is brought against any Insured which is reasonably likely to involve" the National Union Policy, which in this case would be when the damages in the Angle Lawsuit were reasonably likely to exceed the $1 million limit of the underlying Twin City policy.

On May 18, 2017, Home Depot placed National Union on notice of the Angle Lawsuit. On May 26, 2017, National Union refused to agree to contribute towards the settlement of the Angle Lawsuit, stating, among

other things, that it "has been substantially prejudiced by Home Depot's delay in providing notice to National Union."

The Angle Lawsuit was submitted to binding arbitration on November 14, 2017 and resulted in an award in favor of Angle. Home Depot promptly sought payment from National Union and Twin City. On December 6, 2017, National Union advised Home Depot that it would not fund the arbitration award, on various grounds, including that it "was substantially prejudiced by Home Depot's failure to timely notify National Union of the Angle Lawsuit."

On December 6, 2017 Home Depot paid the arbitration award to Angle in the amount of $9M.

On April 11, 2018, Home Depot brought this breach of contract and bad faith action against Twin City and National Union for their failure to accept Home Depot's tenders and subsequent refusal to settle the case or to pay the arbitration award.

In its Answer to the Complaint, National Union alleged the following affirmative defense: "Home Depot's claims are barred because Home Depot's late notice of the Angle Lawsuit resulted in substantial prejudice to National Union." See National Union's Answer to Complaint, 13:1-13:4.

Home Depot initially intended to rebut National Union's late-notice defense by presenting evidence to establish that the non-privileged information available to Home Depot (e.g., deposition transcripts, medical records, bills, communications from Plaintiff's counsel) did not indicate that the damages in the Angle Lawsuit were reasonably likely to exceed the $1 million primary limit until shortly before Home Depot provided National Union with notice of the Angle Lawsuit on May 18, 2017. (Declaration of Joshua S. Goodman ("Goodman Dec.") para. 2.) However, on August 2, 2019, Home Depot decided to waive its privileges with

respect to two case evaluation reports it received from defense counsel in the Angle Lawsuit ("CERs") and produce them for the limited purpose of establishing that the reports Home Depot received from its defense counsel did not indicate that the damages at issue in the Angle Lawsuit were reasonably likely to exceed $1 million.  (Goodman Dec., para. 3.) The production of the CERs was made after Home Depot obtained the approval of McCune Harbor, Home Depot's defense counsel, to do so. (Goodman Dec., para 4.)

Home Depot is aware that the timing of its decision to produce the CERs could make it difficult for National Union to complete discovery implicated by the production of the CERs by the close of fact discovery on August 30, 2019. The production was made 2 weeks before National Union's deposition of Home Depot's 30(b)(6) witness on the topic of Home Depot's "decision to provide notice" of the Angle Lawsuit to its insurer. (Goodman Dec., para 5.) It should be noted, however, that the 30(b)(6) depositions which National Union alleges above were scheduled to go forward "one business day" after the production of the CERs were not, contrary to what National Union implies, at all related to topics that could involve the produced documents. (Goodman Dec., para 5.) In fact, National Union did not ask a single question related to the two CERs or about the value of or damages in the Angle Lawsuit of any of the four 30(b)(6) witnesses Home Depot produced on August 5th and 6th. (Goodman Dec., para 5.)

More importantly, Home Depot agreed to National Union's request for a stipulation to continue the trial and all discovery and related dates by 2 months to address any potential prejudice National Union may have as a result of the timing of Home Depot's production of the two CERs. (Goodman Dec., para 6.) On August 14, 2019, Home Depot filed with the

court a stipulation and proposed order to modify the scheduling order to continue all dates by 2 months. (Goodman Dec., para 6.) Home Depot also agreed to allow questioning of its as yet undeposed 30(b)(6) witness based on the CERs produced and to allow National Union to reinstate, without notice, category 16 of its 30(b)(6) deposition notice to Home Depot. (Goodman Dec., para 7.)

In a further good faith effort to resolve the discovery dispute at issue in this motion, Home Depot, during its meet and confer efforts with National Union offered to produce all confidential communications from its defense counsel that reflected whether or when, prior to May 18, 2017 (the date notice was provided to National Union), the Angle Lawsuit was reasonably likely to have a value of more than $1 million, and Home Depot agreed that such communications would include descriptions by defense counsel of the settlement value, verdict range, or value of the case, either quantitatively (i.e., with numbers) or qualitatively (i.e., with descriptions as to the value). (Goodman Dec., para 8.) National Union rejected this offer, arguing that it is entitled to all communications from defense counsel, except perhaps those that related only to scheduling (and perhaps even those).  (Goodman Dec., para 8.)

In a further effort to resolve this discovery dispute (and following Home Depot's receipt of National Union's portion of this Joint Stipulation regarding National Union's Motion to Compel), Home Depot produced additional privileged communications from its defense counsel that state or describe the value of the Angle Lawsuit. (Goodman Dec., para 9.) With these additional documents, Home Depot has now produced all privileged communications from its defense counsel prior to the date National Union was notified of the Angle Lawsuit that state or describe the potential value

of the Angle Lawsuit, either quantitatively (i.e., with numbers) or qualitatively (i.e., with words). (Goodman Dec., para 9.)

Contrary to National Union's assertions, Home Depot is not cherry-picking defense counsel's case evaluations, producing those that are favorable and withholding those that are not. (Goodman Dec., para 10.) In fact, with the supplemental production described above, National Union now has all the communications from Home Depot's defense counsel (predating notification to National Union) that state or describe the value of the Angle Lawsuit. (Goodman Dec., para 9.) Any assertion to the contrary is baseless speculation.

National Union's Factual and Procedural Background section dwells on Home Depot's invocation of the attorney-client and attorney work product privileges, suggesting that Home Depot's actions were reprehensible. However, Home Depot had every right to invoke these privileges and has agreed to and filed the stipulation that would cure any prejudice. Notwithstanding National Union's Factual and Procedural Background section, the only issue before the court is what privileged communications from Home Depot's defense counsel to Home Depot fall within the scope of Home Depot's privilege waiver.

2.   The Scope of the Waiver is "Narrowly Defined"

The starting point for this Motion is the fact that Home Depot is permitted under well-established case law to waive the attorney-client privilege as to one issue while preserving the privilege as to everything else. *Transamerica Title Ins. Co., supra,* 188 Cal.App.3d 1047, 1052 [italics added], citing *Travelers Ins. Companies v. Superior Court,* (1983) 143 Cal.App.3d 436 and *Jones v. Superior Court, supra,* 119 Cal.App.3d 534. Injecting the issue of advice of counsel into a lawsuit does not result in a complete waiver of the attorney-client and work product privileges.

See *SNK Corp. of America v. Atlus Dream Entertainment Co. Ltd.*, 188 F.R.D. 566, (N.D.Cal. 1999), citing *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 929 (N.D.Cal.1976). National Union does not dispute this.  The issue in this motion is what communications from defense counsel to Home Depot fall within the scope of Home Depot's waiver of the attorney-client and attorney work product privileges.  National Union argues that "all defense counsel communications to Home Depot that are 'related' to or probative of determining the case value" must be produced. (See section B.3, above.) Home Depot's position is that only those communications which contain an evaluation of the Angle Lawsuit as reasonably likely to exceed $1 million (or not) are within the privilege waiver and should be produced.

The scope of Home Depot's waiver "is *narrowly defined* and the information required to be disclosed must fit strictly within the confines of the waiver." *Transamerica Title Ins. Co., supra,* 188 Cal.App.3d 1047, 1052 [italics added], citing *Travelers Ins. Companies v. Superior Court,* (1983) 143 Cal.App.3d 436 and *Jones v. Superior Court, supra,* 119 Cal.App.3d 534. Injecting the issue of advice of counsel into a lawsuit does not result in a complete waiver of the attorney-client and work product privileges. See *SNK Corp. of America v. Atlus Dream Entertainment Co. Ltd.*, 188 F.R.D. 566, (N.D.Cal. 1999), citing *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 929 (N.D.Cal.1976). The scope of the waiver is governed by a rule of fairness. *Id.*

For example, the defendant in *SNK Corp.*, who was being sued for malicious prosecution, asserted the defense of advice of counsel for the purpose of establishing probable cause to file the underlying lawsuit. In determining the scope of the implied waiver of the attorney-client and work product privileges given the insertion of the defense of advice of counsel,

1  the court held that defendant had to produce specific categories of

2  privileged documents related to its defense, such as those addressing its

3  motive in bringing and maintaining the lawsuit. *Id.*, 573-576. There was no

4  blanket waiver of these privileges. *Id.* Moreover, the court held that

5  defendant did not have to produce any privileged documents prepared

6  after its decision to dismiss the underlying lawsuit because such

7  documents had minimal relevance to the advice of counsel defense:

> 8  The Court finds that information in communications occurring, and
> 9  work product generated, after April 10, 1998, to have minimal, if any,
> 10 relevance to the issues raised by Atlus's advice of counsel defense
>    or any claim in this case. Here, the policies and values underlying the
> 11 preservation of the attorney-client privilege and work product doctrine
> 12 outweigh any need for to allow SNK to discover privileged information
>    in this period. The Court's balancing of these interests and application
> 13 of fairness principles weigh in favor of upholding the privilege and
>    work product protection and limiting waiver to exclude
> 14 communications and work product materials in this period.

15 *Id.*, 576. This portion of *SNK Corp.'s* holding is particularly instructive given

16 National Union's demand for privileged documents prepared *after* May 18,

17 2017, when Home Depot put it on notice of Angle's lawsuit. Consistent

18 with *SNK Corp.'s* holding, any privileged documents prepared *after* May

19 18, 2017 are of minimal relevance to the issue of when Home Depot

20 should have put National Union on notice of the Angle Lawsuit and,

21 therefore, the subject privileges must be upheld for these documents.

22    *Walker v. County of Contra Costa* also demonstrates the limits of a

23 waiver resulting from inserting otherwise privileged matter into a lawsuit

24 and how closely the court will look at privileged matter to determine if it

25 falls within the scope of the privilege waiver, including ordering production

26 of only a portion of a document. In *Walker*, the court held that a defendant

27 in an employment discrimination lawsuit that had asserted an affirmative

28 defense based on the adequacy of its pre-litigation investigation of the

claimed discrimination, conducted by its attorney, had waived the attorney-client and work-product privileges with regard to the portions of its attorney's report **describing** her investigation of the alleged discrimination, but not with regard to the portions **analyzing** whether her investigation was adequate.  *Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D.Cal. 2005).

National Union argues that it is entitled to essentially all communications from counsel providing legal analysis and case strategy, regardless of whether those communications address or discuss case value. National Union argues fallaciously that since everything in a case can affect case value, every communication is related to case value. The very example National Union uses demonstrates the flaw in its argument. Home Depot filed a demurrer in the Angle Lawsuit.  National Union argues that since a demurer can impact the ultimate value of the case, any communication about that demurrer, or the reasons for or strategy behind filing it, must "relate to" case value.  As discussed, below, this is simply incorrect.

As the case law discussed above makes clear, the question is what documents or portions of documents fall within the privilege waiver, which is to be narrowly construed.  In this case, Home Depot seeks to use privileged communications that show whether and when the value of the Angle Lawsuit was reasonably likely to involve more than $1M.  Not every communication from defense counsel, even about strategy, would be relevant, i.e., have some tendency in reason to prove or disprove that the Angle Lawsuit was reasonably likely to involve more than $1 million.  If defense counsel wrote to Home Depot: "we recommend filing a demurrer because the case has a value of $2M," that communication would fall

within the scope of the privilege waiver.  But none of the following hypothetical communications about the demurrer would:

- We recommend filing a demurrer because the product liability cause of action is poorly pled, and we may get a clearer factual basis for that cause of action in an amended complaint;
- A demurrer is decided based on the four corners of the complaint and the court won't consider new evidence or material we submit;
- Would you like us to file a demurrer?'
- The court denied our demurrer, and as such we will now file an answer.

None of these communications states or describes the value of the case.  None of them contains any information which communicates to Home Depot (or a jury) whether the case did or did not involve $1 million or any particular dollar figure.  None of them would even be admissible on the issue of whether the case did or did not involve $1 million or any particular dollar figure.  Any relevance these communications would have to whether and when it appeared reasonably likely that the case involved more than $1 million would be so tenuous as to be thoroughly outweighed by "the policies and values underlying the preservation of the attorney-client privilege and work product doctrine." *SNK Corp. of America v. Atlus Dream Entertainment Co. Ltd.*, 188 F.R.D. 566, 576, (N.D.Cal. 1999)

National Union has cited no case law to support its expansive view of Home Depot's privilege waiver.  Nor has it cited any case law to support the proposition that Home Depot's privilege waiver encompasses any communication that could theoretically be related to case value. Only those communications that convey that the Angle Lawsuit was or was not

reasonably likely to involve in excess of $1M would fall within the privilege

waiver, as narrowly construed, and need to be produced.

### 3.   Post-Notice Communications Fall Outside The Waiver

National Union argues that the scope of the waiver should extend to

post-notice communications from Home Depot's counsel because they

could be "probative of the reasonableness of Home Depot's reliance on

advice of counsel regarding case value." National Union explains that it

should be able to explore such privileged communications because they

might be "probative of the reliability of defense counsel's unreasonably

low case evaluation." In other words, National Union wants these

privileged communications so it could argue that Home Depot's reliance

on its former counsel was unreasonable because its latter counsel

disagreed with former counsel. Any such communications are irrelevant to

the timeliness of Home Depot's notice and would fall outside the narrowly

defined scope of the waiver.

Whether Home Depot's subsequent counsel disagreed with prior

counsel's evaluation of case value *after* the notice to National Union is

irrelevant to the timeliness of Home Depot's notice and is outside the

scope of Home Depot's privilege waiver. The timeliness of an insured's

notice is based on an objective standard. *American States Insurance Co.

v. National Cycle, Inc.*, 260 Ill.App.3d 299 (1994); *Hartford Accident &

Indemnity Co. v. Rush Presbyterian–St. Luke's Medical Center*, 231

Ill.App.3d 143 (1992); *Atlanta International Insurance Co. v. Checker Taxi

Co., Inc.* (1991) and *Highlands Insurance Co. v. Lewis Rail Service Co.*,

10 F.3d 1247 (7th Cir.1993); *Atlanta International Insurance Co. v. Yellow

Cab Co., Inc.,* 962 F.2d 657 (7th Cir.); reh'g den. with op., 972 F.2d 751

(7th Cir.1992). When an excess carrier alleges a late-notice defense, "the

focus is on when the insured *should have known* that the claim against it

would likely exhaust its primary insurance coverage and trigger its excess coverage…" *Morris Park Contr. Corp. v. National Union Fire Ins. Co. Of Pittsburgh, PA.*, (2006) 33 AD3d 763, 765, emphasis added). Thus, while communications from counsel regarding case value *prior* to the notice to National Union would be relevant towards establishing when Home Depot should have known that the Angle Lawsuit was reasonably likely to exhaust the primary limit, such communications prepared *after* the notice would not be relevant to this analysis. Moreover, not having such communications would not foreclose National Union's ability to argue that Home Depot's reliance on counsel was unreasonable.

In fact, National Union's argument is exactly the type of argument rejected in *Walker v. County of Contra Costa*. In that case, the court held that a defendant in an employment discrimination lawsuit that had asserted an affirmative defense based on the adequacy of its pre-litigation investigation of the claimed discrimination, conducted by its attorney, had waived the attorney-client and work-product privileges with regard to the portions of its attorney's report **describing** her investigation of the alleged discrimination, but not with regard to the portions **analyzing** whether her investigation was adequate:

> Their affirmative defense says nothing about any intra-litigation investigation, only the pre-litigation investigation. Consequently, there is no waiver of the work product doctrine with respect to Tripoli's Findings and Conclusions at the end of the report. These finding are in fact the most protected form of work product: the attorney's legal analysis and opinions. They may reflect her advice to Defendants within this litigation and are therefore shielded from discovery. Accordingly, this Court orders Defendants to disclose to Walker all of the Tripoli Report, with the exception of the Findings and Conclusions.

*Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D.Cal. 2005).

/ / /

1   This makes sense because the attorney's thoughts on and analysis

2   of the adequacy of the investigation were not essential to the plaintiff's

3   ability to challenge the adequacy of the investigation. In fact, even if

4   subsequent counsel here was critical of prior counsel's evaluation, that

5   would not even be admissible.  That would be nothing more than one

6   attorney's opinion and would be information that Home Depot did not have

7   prior to putting National Union on notice. Like *Walker*, the fact that Home

8   Depot has placed at issue communications from counsel prior to its notice

9   to National Union to establish the reasonableness of the timing of its notice

10  does not open the door to privileged post-notice communications from

11  counsel regarding case value.

12            4.   National Union's Case Law Is Inapposite

13  None of the cases cited by National Union support its position

14  regarding the alleged breadth of the waiver. In *Hernandez v. Tanninen,* the

15  court held that "[d]isclosure constitutes a waiver of the attorney-client

16  privilege, however, 'only as to communications about the matter actually

17  disclosed,'" which is consistent with Home Depot's position herein.

18  *Hernandez, supra,* 604 F.3d at 1100 ["Hernandez produced notes from

19  Ferguson's communications with Tanninen that were protected work

20  product, but that constituted a waiver of work product privilege only as to

21  that subject."]. *Alliance Atlantis Releasing Ltd., supra,* and *Wellpoint*

22  *Health Networks, Inc.*, supra 59 Cal.App.4th 110 (1997) do not address

23  the scope of a waiver. In *Alliance*, the court found that the disputed

24  documents and information were not privileged because the attorney

25  involved was not acting in the capacity of an attorney. *Alliance, supra,*

26  2009 WL 10672591 at pp. 3-4. In *Wellpoint*, the court never reached the

27  issue of whether there was a waiver, finding the issue was not ripe for

28  adjudication because plaintiff had yet to file an amended complaint after

1  the sustaining of defendant's demurrer with leave to amend. *Wellpoint,*

2  *supra,* 59 Cal.App.4th at p. 129. Thus, it did not address the scope of the

3  waiver.

4            5.   <u>*In Camera* Review Is Not Justified</u>

5         National Union's request for an *in camera* review of all of Home

6  Depot's attorney-client communications is premature and not supported

7  by the case law. National Union claims an *in camera* review is necessary

8  because it fears Home Depot might not comply with a court order defining

9  the scope of the subject waiver. This slur on the character of Home

10 Depot's counsel is completely unwarranted. As set forth in the Declaration

11 of Joshua S. Goodman, counsel for Home Depot has contacted the two

12 firms that represented Home Depot in the Angle Lawsuit and obtained

13 their complete files. (Goodman Dec., para 11.)  As also set forth, counsel

14 for Home Depot will faithfully implement whatever order this court makes

15 as to the production of privileged communications. (Goodman Dec., para

16 11.) This Declaration and Federal Rule of Civil Procedure, Rule 11 are

17 more than sufficient to ensure compliance with an order of this court on

18 this motion.

19        Furthermore, to compel an *in camera* review, National Union must

20 establish:

21      a factual basis sufficient to support a reasonable, good faith belief
      that *in camera* inspection may reveal evidence that information in

22      the materials is not privileged. If the party makes such a showing,

23      the decision whether to conduct the review rests within the
      discretion of the district court.

24

25 *In re Grand Jury Investigation*, *supra,* 974 F.2d at p. 1075 [regarding in

26 camera review of attorney-client communications to determine whether

27 crime-fraud exception applies], citing *U.S. v. Zolin,* 491 U.S. 554, 572.

28

National Union cannot meet this burden because there is still no order defining the scope of Home Depot's waiver. Home Depot must first have an opportunity to comply with the court's order before having to cede to an *in camera* review of all attorney-client communications in the underlying matter. As court held in *In re Grand Jury Investigation, supra*:

> Although *in camera* review of documents does not destroy the attorney-client privilege, **it is an intrusion which must be justified**. Some threshold must be met by the party contesting the application of privilege before the court examines the materials.

*Id.*, 1074, boldface emphasis added. Until Home Depot has had such an opportunity, National Union cannot make the necessary showing.

## III.   CONCLUSION

### A.   National Union's Conclusion

For all the foregoing reasons, National Union respectfully requests that the Court issue an order compelling Home Depot to further respond to Request Nos. 8-11 by producing all defense counsel communications with Home Depot that are related to or probative of determining the value of the Angle Lawsuit.  To that end, National Union also requests that the Court order Home Depot to provide the Court with the complete files of McCune & Harber, LLP and Lewis Brisbois relative to the Angle Lawsuit for an *in camera* review to determine which documents are related to or probative of determining case value and, therefore, fall within the scope of Home Depot's waiver.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**B.    Home Depot's Conclusion**

2      In conclusion, Home Depot respectfully requests that the Court

3  deny this motion.

4  Dated: August 20, 2019              NICOLAIDES FINK THORPE
                                       MICHAELIDES SULLIVAN LLP
5

6                                By:_____*/s/ Jeffrey N. Labovitch*_____

7                                      Matthew J. Fink
                                       Jeffrey N. Labovitch
8                                      Chris J. Middleton
                                       Attorneys for Defendant National
9                                      Union Fire Insurance Company of
                                       Pittsburgh, PA
10

11

12  Dated: August 20, 2019             GOODMAN NEUMAN HAMILTON LLP

13

14                               By:_____*/s/ Joshua S. Goodman*_____
                                       Joshua S. Goodman
15                                     Paige P. Yeh
                                       Attorneys for Plaintiff Home Depot
16                                     U.S.A., Inc.

17

18              **Statement of Authority to File**

19      Per Civil L.R. 5-4.3.4(a)(2)(i), I attest that all signatories on this

20  document and on whose behalf the filing is submitted concur in the filing's

21  content and have authorized the filing of this document.

22  Dated: August 20, 2019        By:_____*/s/ Jeffrey N. Labovitch*_____

23                                     Jeffrey N. Labovitch

24

25

26

27

28