JEFFREY N. LABOVITCH (SBN: 221934)
jlabovitch@nicolaidesllp.com
CHRIS J. MIDDLETON (SBN: 258331)
cmiddleton@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
4250 Executive Square, Suite 540
San Diego, CA 92037
Telephone:     (858) 257-0700
Facsimile:     (858) 257-0701

MATTHEW J. FINK (*admitted pro hac vice*)
mfink@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S. Wacker Street, Suite 2100
Chicago, IL 60606
Telephone:     (312) 585-1400
Facsimile:     (312) 585-1401

Attorneys for Defendant and Third-Party Plaintiff
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOME DEPOT, U.S.A., INC.<br><br>          Plaintiff,<br><br>v.<br><br>TWIN CITY FIRE INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1-20, inclusive,<br><br>          Defendants. | Case No.: 2:18-cv-03051-DDP-JCx<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Accompanying Documents:**<br>Notice of Motion; Memorandum of Points and Authorities; Statement of Uncontroverted Facts; Declaration of Jeffrey N. Labovitch; Proposed Order; Proposed Judgment |

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, <br><br>        Third-Party Plaintiff, <br><br> v. <br><br> STEADFAST INSURANCE COMPANY, <br><br>        Third-Party Defendants. | Date:       June 7, 2021 <br> Time:      10:00 a.m. <br> Location:  Courtroom 9C <br>              350 West 1st St. <br>              Los Angeles, CA 90012 <br> Judge:    Hon. Dean Pregerson <br><br> Complaint Filed:  April 11, 2018 <br> Answer Filed:    May 31, 2018 <br> Fact Discovery <br> Cut Off:        March 30, 2021 <br> Pretrial <br> Conference:    July 26, 2021 <br> Trial Date:    August 10, 2021 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on June 7, 2021 at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Dean Pregerson in Courtroom 9C of the United States Courthouse located at 350 West 1st Street, Los Angeles, California 90012, Defendant National Union Fire Insurance Company of Pittsburg, Pa. ("National Union") will move this Court for summary judgment, or in the alternative, partial summary judgment, against Plaintiff Home Depot, U.S.A., Inc. ("Home Depot") pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that no triable issue of material fact exists and National Union is entitled to judgment as a matter of law, as follows:

1. National Union has no duty to indemnify Home Depot for the underlying Angle claim because the rat trap that injured Angle was repackaged and, therefore, coverage is precluded by exclusion (d);

2. National Union has no duty to indemnify Home Depot for the underlying Angle claim because Home Depot failed to adjust the returned rat trap pursuant to its contract with Woodstream and their thirty-year custom and practice, which required Home Depot to destroy it in field and seek a credit from Woodstream (not return it to the shelf) and, therefore, coverage is precluded by exclusion (e);

3. National Union has no duty to indemnify Home Depot for the underlying Angle claim because Home Depot failed to inspect the rat trap that injured Angle as it normally does in the usual course of business and, therefore, coverage is precluded by exclusion (e);

4. National Union has no duty to indemnify Home Depot for the underlying Angle claim because Home Depot unreasonably failed to provide timely notice of the Angle claim, resulting in substantial prejudice to National Union as a matter of law; and

/ / /

5.     Home Depot cannot maintain its claim for bad faith because there was no breach of contract.

Summary judgment should be entered dismissing all claims Home Depot asserts. Alternatively, to the extent summary judgment is not granted, National Union seeks the following rulings:

1.     There is no bad faith as National Union's denial of the underlying Angle claim involved a genuine dispute as to coverage and National Union reasonably handled the Angle claim;

2.     Home Depot cannot maintain its punitive damages claim as National Union did not act with malice, oppression, or fraud.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 23, 2021.

This Motion is based on this Notice of Motion and Motion, and accompanying Memorandum of Points and Authorities, Statement of Uncontroverted Facts and Conclusions of Law, Declaration of Jeffrey N. Labovitch, Proposed Judgment, Proposed Order, the pleadings, files and records in this lawsuit, and upon such other matters as may be presented to the Court prior to and at the time of the hearing.

Dated: April 30, 2021                     NICOLAIDES FINK THORPE
                                          MICHAELIDES SULLIVAN LLP

                              By:  _____/s/ Jeffrey N. Labovitch_____
                                          Matthew J. Fink
                                          Jeffrey N. Labovitch
                                          Chris J. Middleton
                                          Attorneys for Defendant National Union
                                          Fire Insurance Company of Pittsburgh,
                                          Pa.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    UNDISPUTED MATERIAL FACTS ................................................. 3

    A.    Woodstream's Agreement With Home Depot Requires Home Depot to Destroy Returned Rat Traps For Credit And Forbids Resell. ............... 3

    B.    In Placing The Rat Trap Back On The Shelf With Batteries Inside, Home Depot Also Violated Its Own Internal Policies ........................... 4

    C.    Angle Sustains Significant Bodily Injury While Handling The Electrified Rat Trap Inside A Home Depot Store ................................. 5

    D.    Home Depot Mishandles The Lawsuit And Fails To Defend The Product ........................................................................................... 5

    E.    Home Depot Notifies National Union Of Angle's Claim After All Discovery Closed And Eight Days Before Trial ................................... 8

    F.    Home Depot Sustains A $9 Million Award ......................................... 8

    G.    Home Depot Demands that Its Insurers Pay the Arbitration Award ...... 9

III.   THE POLICIES ................................................................................... 9

    A.    The Twin City Primary Policy .............................................................. 9

    B.    The National Union Excess Policy ..................................................... 10

IV.    NATIONAL UNION IS ENTITLED TO SUMMARY JUDGMENT .......... 10

    A.    Standard for Determining Motion for Summary Judgment ................. 10

    B.    Two Separate Exclusions Preclude Coverage For The Angle Claim ... 11

        1.    The Repackaging Exclusion Applies to Preclude Coverage ..... 12

        2.    Exclusion (e) Also Applies to Exclude Coverage .................... 14

            a)    Home Depot Failed to Adjust the Rat Trap as it Agreed to and Normally Undertakes in the Usual Course of Business ........................................................................... 14

            b)    Home Depot Failed to Inspect the Rat Trap as it Normally Undertakes in the Usual Course of Business .. 15

C.     Home Depot's Unreasonably Late Notice Prejudiced National Union 16

    1.    The California Supreme Court is Most Likely to Adopt A Reasonableness Standard for Late Notice to Excess Insurers ... 16

    2.    Home Depot Was Required to Notify National Union of the Lawsuit as Soon as Practicable And Failed To Do So .............. 18

    3.    Home Depot's Unreasonably Late Notice Prejudiced National Union by Precluding any Defense of the Product .................... 19

    4.    Home Depot's Late Notice Substantially Prejudiced National Union as a Matter of Law ......................................................... 21

D.     Absent Breach of Contract, There Is No Bad Faith ............................. 22

V.    ALTERNATIVELY, SUMMARY ADJUDICATION SHOULD BE GRANTED IN NATIONAL UNION'S FAVOR ......................................... 22

A.     No Bad Faith Exists Because (1) There is a Genuine Dispute as to Coverage and (2) National Union's Conduct Was Reasonable ........... 23

B.     National Union Did Not Act With Oppression, Fraud, or Malice ....... 24

VI.    CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Aceves v. Allstate Ins. Co.,*
    68 F.3d 1160 (9th Cir.1995) ................................................................. 24

*Am. Zurich Ins. Co. v. Country Villa Serv. Corp.,*
    No. 2:14-CV-03779-RSWL, 2015 WL 4163008 (C.D. Cal. July 9, 2015) ...... 17

*American White Cross Labs., Inc. v. Continental Ins. Co.,*
    202 N.J. Super. 372 (App. Div. 1985) ................................................. 13

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................ 10

*Basich v. Allstate Ins. Co.,*
    87 Cal. App. 4th 1112 (2001) ............................................................ 24

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................ 10

*Century Surety Co. v. Visemer De Gelt, LLC,*
    No. 211CV4222ODWFFMX, 2012 WL 13008730 (C.D. Cal. Feb. 17, 2012) ... 21

*Chateau Chamberay Homeowners Assn. v. Associated Int. Ins. Co.,*
    90 Cal. App. 4th 336 (2001) ............................................................. 23

*Colonial Gas Energy System v. Unigard Mut. Ins. Co.,*
    441 F. Supp. 765 (N.D. Cal. 1977) ..................................................... 21

*Cybernet Ventures, Inc. v. Hartford Ins. Co.,*
    168 Fed. Appx. 850 (9th Cir. 2006) .................................................... 21

*Diamond Heights Assn. v. National Am. Ins. Co.,*
    227 Cal. App. 3d 563 (1991) ............................................................ 17

*Emp'rs Ins. of Wausau v. Granite St. Ins. Co.,*
    330 F.3d 1214 (9th Cir.2003) ........................................................... 17

*Gaylord v. Nationwide Mut. Ins. Co.,*
    776 F. Supp. 2d 1101 (E.D. Cal. 2011) ............................................... 24

*Gravquick A/S v. Trimble Navigation Int'l, Ltd.,*
    323 F.3d 1219 (9th Cir.2003) ...................................................... 16, 17

*Guebara v. Allstate Ins. Co.*,
   237 F.3d 987 (9th Cir. 2001) ................................................................. 23

*Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co.*,
   280 F.3d 744 (7th Cir. 2002) ........................................... 11, 12, 13, 15

*Love v. Fire Ins. Exch.*,
   221 Cal. App. 3d 1136 (1990) ............................................................. 22

*Lunsford v. Am. Guar. & Liab. Ins. Co.*,
   18 F. 3d 653 (9th Cir. 1994) ............................................................... 23

*Morris v. Paul Revere Life Ins. Co.*,
   109 Cal. App. 4th 966 (2003) ............................................................. 24

*Neumeyer v. Wawanesa Gen Ins. Co.*,
   No. 14CV181-MMA RBB, 2015 WL 1924981 (S.D. Cal. April 24, 2015) ........ 25

*Northwestern Title Sec. Co. v. Flack*,
   6 Cal. App. 3d 134 (Ct. App. 1970) ............................................... 21, 22

*Pitzer College v. Indian Harbor Ins. Co.*,
   8 Cal. 5th 93 (2019) ........................................................................... 16

*Providence Washington Ins. Co. v. Container Freight, Inc.*,
   68 Cal. Rptr. 2d 776 (1997) (depublished) ..................................... 17, 21

*SDR Co. v. Fed. Ins. Co.*,
   196 Cal. App. 3d 1433 (Ct. App. 1987) ............................................... 11

*SEMX Corp. v. Federal Ins. Co.*,
   398 F. Supp. 2d 1103 (C.D. Cal. 2005) ............................................... 23

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,
   78 Cal. App. 4th 847 (Ct. App. 2000) ...................................... 11, 13, 16

*Slottow v. Am. Cas. Co.*,
   10 F.3d 1355 (9th Cir. 1993) ............................................................. 25

*Standard Artificial Limb, Inc. v. Allianz Ins. Co.*,
   895 S.W.2d 205 (Mo. Ct. App. 1995) ................................................. 13

*Tomaselli v. Transamerica Ins. Co.*,
   25 Cal. App. 4th 1269 (1994) ............................................................. 25

*Travelers Property v. Centex Homes*,
  2011 WL 1225982 (N.D. Cal., Apr. 1, 2011) ...................................................... 21

*Valladao v. Fireman's Fund Indem. Co.*,
  13 Cal.2d 322 (1939) ...................................................... 21

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal. 4th 1 (1995) ...................................................... 11, 22

**<u>STATUTES</u>**

Cal. Civ. Code § 3294 ...................................................... 24

Fed. R. Civ. P. 56(a) ...................................................... 10

Fed. R. Civ. P. 56(g) ...................................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

A Home Depot customer purchased a Victor electronic model m240 rat trap ("Rat Trap") manufactured by Woodstream Corporation ("Woodstream"), which is packaged and sold *without* batteries included. That customer returned the Rat Trap to Home Depot with batteries installed. Home Depot did not properly inspect the Rat Trap before ultimately placing it back on the shelf for sale *with* the batteries still installed. Placing the returned Rat Trap back on the shelf violated the usual practice and written agreement between Home Depot and Woodstream, as well as Home Depot's own procedures for handling returned merchandise.

Unfortunately, customer Cheyenne Angle ("Angle") was shocked and seriously injured when he handled the repackaged Rat Trap at a Home Depot store, which had batteries installed, unbeknownst to Angle. When Angle filed suit against Home Depot for negligence and products liability, Home Depot privately accepted liability, assumed the case was of minimal value, and purposely chose not to notify Woodstream or Woodstream's insurers, Twin City Fire Insurance Company ("Twin City") and National Union.

Three years after Angle initially made his claim, and literally days until trial, Home Depot finally woke up and suddenly realized the case was properly valued at 7 to 8 figures, and decided to try to push that exposure onto Woodstream and its insurers; only once Home Depot understood the magnitude of Angle's claim did it notify Twin City and National Union. By then, Home Depot understood it was in a position to use uncontested evidence of the Rat Trap's alleged design defects to its advantage against Woodstream's insurers. Home Depot's eleventh-hour notice caused irreparable harm to the defense against Angle's product defect claim and resulted in a $9 million arbitration award against Home Depot. Home Depot's

careless placing of a live electronic Rat Trap on its shelf and unreasonably late notice to National Union precludes coverage under the National Union policy.

First, two exclusions in the National Union policy preclude coverage for Home Depot as an alleged additional insured. As detailed below, exclusion (d) in the relevant vendor's endorsement excludes coverage for repackaging. Here, Home Depot placed the Rat Trap back on the sales floor after the packaging had been altered by including batteries installed in the product, which are not included in the original packaging. The plain language of the repackaging exclusion precludes coverage to Home Depot for the Angle claim and supports granting summary judgment in National Union's favor.

Exclusion (e) in the relevant vendor's endorsement precludes coverage for any failure to make inspections or adjustments as Home Depot normally makes in the usual course of business. Woodstream and Home Depot's agreement and normal practice required that Home Depot destroy rat traps returned by customers rather than restock the product. In attempting to resell the Rat Trap, Home Depot failed to follow its agreement and custom and practice with Woodstream which required it to destroy the returned Rat Trap and seek a credit. Further, by returning the electronic Rat Trap to the sales floor with batteries installed, Home Depot violated its own policies that requires two different employees to properly inspect returned merchandise to ensure that only "unused" merchandise is resold and that products like a Rat Trap are not a danger to customers while on the shelf. Thus, exclusion (e) also precludes coverage and supports granting summary judgment.

Second, Home Depot's nearly three-year delay in notifying National Union breached the National Union policy's notice condition. Angle repeatedly, and since inception of his claim, alleged Home Depot was liable for a defective Rat Trap, yet Home Depot did nothing to defend the product. Home Depot also failed to have Angle physically examined, failed to have an expert testify that the Rat Trap was not defectively designed, and effectively blocked any actual defense of the Rat Trap's

design by failing to notify Woodstream or Twin City of the Angle claim. On May 9, 2017, Home Depot candidly admitted "the fact that we don't have a defense is more than troubling." Nine days later, on May 18, Home Depot notified National Union (a mere *eight days* before a scheduled trial). Home Depot's unreasonably late notice prejudiced National Union and precludes coverage under the excess National Union policy.

Home Depot created the circumstances leading to Mr. Angle's injuries and the $9 million arbitration award. Home Depot's attempt to shift the monetary responsibility to National Union is ineffective because the National Union policy does not cover Home Depot's self-induced liability. National Union, therefore, is entitled to summary judgment as a matter of law on all claims.

## II.      UNDISPUTED MATERIAL FACTS

### A.      <u>Woodstream's Agreement With Home Depot Requires Home Depot to Destroy Returned Rat Traps For Credit And Forbids Resell.</u>

Woodstream has supplied various products to Home Depot for over 30 years. *See* National Union's Statement of Uncontroverted Facts ("UF") 1. The business relationship between Woodstream and Home Depot is maintained through face-to-face and telephone meetings between the Woodstream CEO and various Vice Presidents of Merchandising at Home Depot. UF 2. Home Depot purchases products, including rat traps, from Woodstream pursuant to a written contract known as a Supplier Buying Agreement ("Contract"), which is renewed automatically. UF 3.

Under the Contract, and pursuant to the custom and practice between the longtime business partners, Home Depot is required not to place a returned Rat Trap back on the shelf for resale.  Rather, Home Depot is to adjust the return by destroying the rat trap in the field for credit. UF 5, 6. Notably, Woodstream's records confirm that between 2010 and 2014, Home Depot received credit for approximately 13,819 Rat Traps. UF 7.

/ / /

Thus, Home Depot's agreement with Woodstream requires Home Depot to *never* place a returned rat trap back on the sales floor. UF 8. As the CEO of Woodstream testified, this is because Woodstream manufactures pest and animal control products, and neither Woodstream nor Home Depot can ever know what a consumer has done with it once it leaves the store and "the risk of a biologic being on that product is a concern." UF 9. In placing the Rat Trap back on the shelf after it was returned, Home Depot did not follow the Contract and custom and practice to destroy the Rat Trap and seek a credit.

**B.    In Placing The Rat Trap Back On The Shelf With Batteries Inside, Home Depot Also Violated Its Own Internal Policies**

Home Depot's general internal policy for handling returned merchandise is found in its written Standard Operating Procedures ("SOP"). UF 4. Pursuant to the SOP, Home Depot's normal practice is for a "Returns Associate" to first *inspect* returned merchandise to ensure it is unused and saleable before sending it to the sales floor. UF 4. The appropriate department "Sales Associate" then performs a second *inspection* of the merchandise before making it available for resale. *Id.* The Sales Associate is expected to have more familiarity with the particular product than the Returns Associate. *Id.*

Critically, Home Depot does not dispute that returned rat traps, which are initially sold without batteries, should *never* be placed back on the sales floor with batteries inside. UF 8, 11. Home Depot also concedes that the only way to determine whether a returned Rat Trap has batteries installed is for Home Depot's personnel to properly inspect the returned product. UF 10, 12. Accordingly, Home Depot violated its own policies when it failed to perform a proper inspection of the Rat Trap before placing the electrified Rat Trap back on the shelf.

/ / /

/ / /

/ / /

**C.   Angle Sustains Significant Bodily Injury While Handling The Electrified Rat Trap Inside A Home Depot Store**

On or about November 11, 2013, Angle walked into a Home Depot store in Corona, California (the "store") to look at rat traps. Home Depot employee Alex Pilat took the Rat Trap off the shelf and handed it to Angle. UF 16. While holding and placing his fingers inside the Rat Trap, Angle was shocked, causing his arms to jerk and drop the Rat Trap (the "Incident"). UF 17. After the initial surprise and horror of the Incident, Pilat and Angle inspected the Rat Trap and observed some wear on the packaging. UF 18. Pilat concluded the Rat Trap was previously returned by a customer with batteries inside and placed back on the shelf. UF 19. While detailed records of each specific return are not available, Home Depot's records confirm three Rat Traps were returned to the store during the month preceding the Incident. UF 20.

By November 19, 2013, Home Depot learned that Angle had gone to the ER, potentially suffered nerve damage, and was making a claim against Home Depot ("Angle Claim"). UF 21. On June 2, 2014, Angle's counsel informed Home Depot through its claims administrator, Sedgwick Claims Management, that Angle "suffered a severe shock" while handling the Rat Trap and there was concern that he "may have suffered permanent nerve damage" and had "constant pain in his hands and arms." UF 22. The June 2 letter also stated both Home Depot and Woodstream are liable pursuant to a products liability theory. *Id*.

**D.   Home Depot Mishandles The Lawsuit And Fails To Defend The Product**

On November 4, 2015, Angle filed his lawsuit titled *Cheyenne Angle v. The Home Depot, et al.*, Riverside County Superior Court Case No. RIC 1513159 ("Lawsuit"). UF 23. The complaint included two causes of action for general negligence and products liability and sought damages for wage loss, medical expenses, general damage, loss of earning capacity, and personal injuries. UF 25.

Angle's complaint asserted that the Rat Trap had been previously purchased by another customer and returned to Home Depot. *Id*. The complaint also asserted

that the prior customer put batteries in the Rat Trap and Home Depot negligently failed to remove the batteries before returning the Rat Trap to the shelf. *Id*. Home Depot accepted this explanation and did not challenge these facts throughout the Lawsuit. UF 26.

Rather than immediately seeking a defense as an additional insured vendor on Twin City's policy and notifying both Woodstream and National Union of the products liability claim in the Lawsuit, Home Depot determined at the outset to handle the Lawsuit as a "core matter" – which, according to Home Depot, is generally one where the loss remains with Home Depot, as opposed to a "tender matter" where the loss typically can be absorbed by a third party. UF 27. Home Depot determined the Lawsuit should be handled as a "core matter" and not tendered because it was alleged the returned Rat Trap was put on the shelf by Home Depot personnel in a used condition with batteries installed that were not included at the time of manufacture by Woodstream. UF 28.

After deciding to handle the Lawsuit as a "core matter," Home Depot's own retained defense counsel, McCune & Harber, LLP ("M&H"), suggested on February 26, 2016 that the case be transferred to Regional Tender Counsel to be tendered to Woodstream. UF 29, 30. But, Home Depot declined to follow this suggestion and instead directed M&H to file a demurrer to the products liability claim. UF 31. Angle's opposition to the demurrer asserted the Rat Trap was "defectively designed and/or manufactured as it was unreasonably dangerous because it was attached to a power source with a charged/live electrical current," *i.e.*, had batteries installed. UF 32. The Court ultimately agreed Angle sufficiently pled a products liability claim and overruled the demurrer. UF 33.

Home Depot then engaged in limited written discovery and deposed Angle on December 16, 2016. Expert witnesses were designated on March 23, 2017. Angle designated, among other experts, biomedical engineer/electrical engineering professor Michael Morse, Ph.D. to testify, in part, regarding "issues of safety and

whether the product as displayed by Home Depot was defective." UF 34. Home Depot designated electrical engineer Phillip Wheeler without knowing his opinions. UF 35. After Home Depot learned Wheeler agreed with Dr. Morse but was not an expert on the effects of electricity on the body, Wheeler was withdrawn as an expert. UF 36. Despite determining that causation and the extent of Angle's injuries were the two key issues in the Lawsuit, Home Depot elected not to conduct a physical examination (also known as an Independent Medical Examination ["IME"]) of Angle, telling defense counsel it was "leery of an IME." UF 37. Based on Home Depot's own lack of preparedness and information, the case was undervalued by M&H at a mere $100,000 on April 5. UF 38, 41.

Fact discovery ended on April 12, 2017 and trial was first scheduled for May 12, 2017. UF 39. Lewis Brisbois Bisgaard & Smith LLP ("LBBS") replaced M&H as defense counsel of record on or about May 3 because, according to Home Depot, the Lawsuit was "now" a products liability case with significant exposure. UF 42. Trial was continued to May 26, but no other deadlines were changed, leaving the factual record as is when Home Depot finally put Woodstream's insurers on notice of the Lawsuit by May 18, 2017. UF 40, 49, 50.  Notably, by the time Woodstream's insurers were notified, they had no opportunity to demonstrate that the product was not defectively designed, because Home Depot failed to obtain and disclose any expert on the issue of the Rat Trap's alleged design defects. UF 43. Thus, a finding that the Rat Trap was defectively designed was all but certain before Woodstream and its insurers were ever given notice of or, a chance to defend, the Lawsuit. Further, the reasonable value of Angle's damages *increased* as a direct result of Home Depot's failure to obtain an IME and the appropriate experts. UF 45, 46.

In its first report on May 8, LBBS summarized the "challenges" Home Depot faced: (1) Home Depot did not have an expert to contradict Angle's key causation expert Dr. Morse; (2) Home Depot's neurosurgeon never "laid eyes" on Angle, *i.e.*, there was no IME; (3) Angle's expert economist was not deposed; and (4) Angle's

neuropsychologist was not deposed and Home Depot never designated an expert to rebut his findings. UF 44. LBBS valued the case at a likely verdict range of $4-$6 million and a settlement range of $3-$4 million. *Id*. On May 9, Home Depot confessed "the fact that we don't have a defense is more than troubling." UF 48.

E. **Home Depot Notifies National Union Of Angle's Claim After All Discovery Closed And Eight Days Before Trial**

Only after LBBS placed a verdict value on the case at $4-$6 million (despite Home Depot knowing the severity of Angle's injuries since at least November 19, 2013, having no defense of the Rat Trap, a mediation set for May 22, 2017, and a trial set on May 26, 2017), Home Depot realized its grave error and finally gave National Union notice on May 18, 2017 at 6:52 p.m. UF 50. Home Depot tendered its defense and indemnity to Woodstream's primary insurer (Twin City) only six days prior. UF 49. By that point, all fact discovery and expert discovery was closed. National Union attended the May 22 mediation, indicated in letters dated May 26 and June 20 that it would continue to investigate the Angle Claim under a full reservation of rights, and requested information from Home Depot so it could evaluate the claim. UF 51, 52, 53.

F. **Home Depot Sustains A $9 Million Award**

Despite having an opportunity to settle the case in June 2017 for $5,500,000, Home Depot rejected Angle's settlement demand and agreed to binding arbitration with a "high-low." UF 54, 55. Home Depot's gamble resulted in an adverse arbitration award of $12,229,803.49, which was reduced to $9,000,000 pursuant to the "high-low" stipulation between Angle and Home Depot ("Arbitration Award"). UF 56. In the Arbitration Award, the arbitrator concluded that (1) Home Depot's negligence caused harm to Angle, and (2) Home Depot sold a defectively designed Rat Trap. UF 57. There is no transcript of the arbitration proceedings.

/ / /

/ / /

### G.      Home Depot Demands that Its Insurers Pay the Arbitration Award

Having failed to defend the product, Home Depot demanded that Woodstream's insurers (Twin City and National Union) pay the Arbitration Award. In a December 6, 2017 letter, National Union denied coverage because the repackaging exclusion (d) precluded coverage, and because it was substantially prejudiced by Home Depot's untimely notice of the Lawsuit. UF 58. The December 6th letter also reserved the right to assert exclusions (e) and (h). *Id*. Home Depot then filed the instant lawsuit against Twin City and National Union.

### III.      THE POLICIES

### A.      The Twin City Primary Policy

Twin City issued an insurance policy to Woodstream, policy no. 13CESOA0368, for the policy period September 1, 2013 to September 1, 2014 (the "Twin City Policy"). UF 60. Section II.6 provides certain additional insured coverage to Woodstream's vendors with respect to "bodily injury" arising out of "your products" which are distributed or sold in the regular course of the vendor's business. UF 65.

Pursuant to section II.6.a.(1), the insurance afforded the vendor is subject to additional exclusions.[1] UF 66.  As relevant to this Motion, the Twin City Policy does not apply to repackaging under Exclusion (d). *Id*. Under Exclusion (e), the Twin City Policy also does not apply to any failure to make such inspections, adjustments, test or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products. UF 67. And under Exclusion (h), the Twin City Policy does not apply to Bodily Injury arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees. UF 68.

---

[1] Policy language that is the same or similar to the Twin City Policy's additional insured vendor's coverage is sometimes referred to in caselaw, and in this Motion, as the "vendors endorsement."

**B.   The National Union Excess Policy**

National Union issued an excess insurance policy to Woodstream, policy no. BE 013587699, for the same policy period (the "National Union Policy"). UF 59. The National Union Policy pays, in relevant part, those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury to which the insurance applies. UF 61. "Insured" includes any organization that is an additional insured under "Scheduled Underlying Insurance" – i.e., the Twin City Policy – but not for broader coverage than would be afforded by that policy. UF 63, 64.

The National Union Policy requires Home Depot to notify National Union, as soon as practicable, of an Occurrence that may result in a claim or Suit under the policy. UF 62. The National Union Policy also states that if a claim is made or Suit is brought against any Insured which is reasonably likely to involve the policy, it must be notified in writing as soon as practicable. *Id.*

**IV.   NATIONAL UNION IS ENTITLED TO SUMMARY JUDGMENT**

**A.   Standard for Determining Motion for Summary Judgment**

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the non-moving party may not rest on the allegations in the pleading; the non-movant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252. A judge may decide the issue if no reasonable jury could decide otherwise. *Id.*

The interpretation of an insurance policy is a question of law, particularly well-suited for summary judgment. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18

(1995).  Further, if the Court does not grant all the relief requested by the motion, it may still enter an order stating any material fact, including an item of damages or other relief, is not genuinely in dispute and has been established in this case. Fed. R. Civ. P. 56(g). Thus, if this Court does not grant summary judgment, it may enter partial summary judgment finding that: (1) there is no basis for a bad faith claim; and (2) punitive damages are not supported because National Union did not act with malice, fraud, or oppression.

**B.    Two Separate Exclusions Preclude Coverage For The Angle Claim**

The National Union Policy provides additional insured coverage to Home Depot to the extent provided under the Twin City Policy, but for no broader coverage than would be afforded by the Twin City Policy. In other words, if the Angle Claim is not covered under the terms of the Twin City Policy, then it is not covered under the National Union Policy. The vendors endorsement in the Twin City Policy is subject to certain exclusions that apply here because (1) Home Depot attempted to resell the Rat Trap that was repackaged with batteries already installed, (2) Home Depot failed to adjust the returned Rat Trap pursuant to its contract with Woodstream and their thirty-year custom and practice, and (3) Home Depot violated its own general internal policy for handling returned merchandise when it failed to inspect the product to ensure the Rat Trap was unused and saleable before placing it back on the shelf.

California courts considering and applying exclusions in the typical vendors endorsement have adhered to the majority view that coverage under the vendors endorsement is inapplicable if the vendor is responsible for selling an altered product that causes the alleged injury. *See Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 280 F.3d 744, 747 (7th Cir. 2002) (applying California law); *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 867-868 (Ct. App. 2000); *SDR Co. v. Fed. Ins. Co.*, 196 Cal. App. 3d 1433, 1438 (Ct. App. 1987). The majority view is based "on the improbability of supposing that the

manufacturer's insurer intends to protect others against the risks that the others create." *Hartford Fire*, 280 F.3d at 747.

As discussed in greater detail below, Home Depot's negligence directly caused harm to Angle. Unlike when a vendor is not involved (*i.e.*, a "closed box defect"), Home Depot was, in this instance, squarely at fault for Angle's injuries. Angle would not have received a shock but for the batteries being installed by a prior customer and Home Depot returning the Rat Trap to the sales floor with batteries still inside. This is the exact type of conduct that is excluded by the vendors endorsement. As Woodstream's insurer, National Union never assumed the risk of protecting Home Depot's customers against risks Home Depot created.

## 1.    The Repackaging Exclusion Applies to Preclude Coverage

Exclusion (d) of the vendors endorsement states that "[t]his insurance does not apply to . . . repackaging." The relevant question, then, is whether the Rat Trap had been repackaged when Home Depot placed the returned Rat Trap on the shelf. The answer is yes, because the original packaging did not include batteries and the restocked product was packaged with batteries included and installed in the Rat Trap. Home Depot does not refute this.

Before the date of the Incident, Woodstream manufactured and supplied the Rat Trap to Home Depot inside of a cardboard container without batteries such that consumers would first have to supply and install the batteries themselves before the Rat Trap was armed. Home Depot then sold the Rat Trap to a customer, and the Rat Trap was later returned with batteries left installed in the product. When Home Depot failed to remove the batteries and placed the Rat Trap back on the sales floor to be sold again, Home Depot effectively placed on its shelf for sale a product that was now packaged in a different manner than the way Woodstream had originally packaged the product before supplying it to Home Depot.

The term "packaging" includes the manner in which Woodstream enclosed the Rat Trap within the cardboard container (*i.e.*, without batteries). Indeed, the initial

definition of "packaging" in the Merriam-Webster dictionary provides that "packaging" is the "enclosing of something in a container or covering." *Packaging*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/packaging (last visited April 28, 2021). Thus, while one part of packaging is the container in which the product is placed, the other part of packaging is the way in which the product is enclosed in that container.

The manner in which Woodstream packaged the Rat Trap in a container *without* batteries included before supplying it to Home Depot is significant.  In placing the returned Rat Trap on the shelf repackaged *with* batteries included, Home Depot altered the product in a way that was wholly outside of Woodstream's control. *See Hartford Fire*, 280 F.3d at 747. There is now a "nexus or causal connection" between Home Depot's sale of the repackaged Rat Trap and Angle's injuries. *Shade Foods, Inc.*, 78 Cal. App. 4th at 868.

Home Depot's interference in the chain of distribution strikes at the heart of the purpose for the exclusions in the vendors endorsement. "This insurance is clearly designed to cover the vendor when he is only a conduit of the product in the stream of commerce but not when he is the instrumentality causing bodily injury to another." *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 209 (Mo. Ct. App. 1995), *citing American White Cross Labs., Inc. v. Continental Ins. Co.*, 202 N.J. Super. 372, 380–81 (App. Div. 1985). Here, Home Depot was not a mere conduit in selling a product made by another. Rather, Home Depot's failure to take out the batteries and affirmatively placing the repackaged product on the shelf for resale is what ultimately caused Angle's injuries. Indeed, this is what Home Depot itself concluded early on in the Lawsuit when it determined the matter was a "core matter."

In sum, the undisputed facts demonstrate that the Rat Trap was repackaged before the Incident and, therefore, National Union is entitled to summary judgment based on the application of Exclusion (d).

/ / /

## 2. Exclusion (e) Also Applies to Exclude Coverage

Exclusion (e) of the vendors endorsement provides that "[t]his insurance does not apply to . . . [a]ny failure to make such inspections, adjustments . . . as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products." In other words, if Home Depot normally makes certain adjustments with respect to returned rat traps in its usual course of business, but failed to do so for the Rat Trap that injured Angle, then Exclusion (e) precludes coverage for the Angle Claim. Exclusion (e) also applies if Home Depot failed to inspect the Rat Trap as it normally undertakes in the usual course of business before placing it back on the shelf. Thus, Exclusion (e) applies for two separate reasons.

### a) *Home Depot Failed to Adjust the Rat Trap as it Agreed to and Normally Undertakes in the Usual Course of Business*

As part of their 30+ year business relationship, Woodstream and Home Depot developed a custom and practice that rat traps returned by customers are destroyed for credit rather than being re-sold. This understanding is memorialized in the Contract between Woodstream and Home Depot. Specifically, under the heading "Defective Merchandise," the Contract references "Return for credit." This means any Woodstream merchandise that is returned by a customer is not resold.  Instead, Home Depot is to adjust the product by destroying it in the field and Woodstream provides a credit to Home Depot. Woodstream refunded Home Depot for 13,819 rat traps between 2010 and 2014 alone.

By failing to adjust the returned Rat Trap pursuant to the Woodstream Contract and custom and practice, Home Depot permitted a fully charged Rat Trap to be placed back on the shelf for sale. Angle would not have been injured had Home Depot followed the Woodstream Contract and custom and practice. For this reason, Exclusion (e) precludes any coverage to Home Depot for the Angle Claim. To find

otherwise is tantamount to "supposing that [National Union] intends to protect others against the risks that [Home Depot] create[s]." *Hartford Fire*, 280 F.3d at 747.

### b) Home Depot Failed to Inspect the Rat Trap as it Normally Undertakes in the Usual Course of Business

Pursuant to Home Depot's general internal policy for handling the return of all merchandise, a Returns Associate inspects the merchandise to ensure it is "unused" before sending it to the sales floor. Further, before the merchandise is made available for resale, the appropriate department Sales Associate must recheck the merchandise. Thus, by returning the electronic Rat Trap to the sales floor with batteries installed, Home Depot violated its own written policies in its SOP that apply to all merchandise, which requires two different employees to properly inspect returned merchandise to ensure that only "unused" merchandise is made available for resale.

Further, Home Depot admits that the returned Rat Trap should not have been placed back on the sales floor with batteries installed in the product. And the only way to determine whether a returned product, such as the Rat Trap, has batteries inside before placing it back on the shelf is to properly *inspect* the product pursuant to its general policy. Even the store manager confirmed "[t]his item is dangerous and should not have been placed back into stock without careful inspection." Declaration of Jeffrey N. Labovitch ("JNL Decl."), Ex. 59, p.8. Yet, despite the two independent inspections Home Depot was supposed to undertake under its own general internal procedures, Home Depot's personnel placed the Rat Trap back on the sales floor with batteries inside, creating the danger to Angle.

In sum, after the Rat Trap was returned, Home Depot (1) failed to destroy in the field and seek credit for the returned Rat Trap pursuant to its Contract with Woodstream and thirty years of custom and practice, and (2) failed to properly inspect the Rat Trap pursuant to its own policies and placed it back on the shelf. In both instances, Home Depot's conduct falls squarely within the language of Exclusion (e). Further, applying Exclusion (e) here is consistent with the purpose of

the vendors endorsement because there is a direct causal nexus between Home Depot's failures and Angle's injuries. *See Shade Foods, Inc.*, 78 Cal. App. 4th at 868. National Union is entitled to summary judgment based on Exclusion (e).

## C.   <u>**Home Depot's Unreasonably Late Notice Prejudiced National Union**</u>

Home Depot failed to notify National Union until a week before trial was scheduled, despite Home Depot knowing by November 19, 2013 that Angle suffered nerve damage and having multiple opportunities to tender the matter both before and during the Lawsuit based on the products liability claim. As detailed below, Home Depot's notice to National Union was unreasonably late and prejudiced National Union by preventing any substantive defense of the Rat Trap. Home Depot's late notice precludes coverage under the National Union Policy as a matter of law.

### 1.   The California Supreme Court is Most Likely to Adopt A Reasonableness Standard for Late Notice to Excess Insurers

A federal court applying California law must apply the law as it believes the California Supreme Court would apply it, and in the absence of a controlling California Supreme Court decision, the court must predict how the California Supreme Court would decide the issue, "using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." *Gravquick A/S v. Trimble Navigation Int'l, Ltd.*, 323 F.3d 1219, 1222 (9th Cir.2003).

The California Supreme Court has not yet decided the appropriate standard for late notice to excess insurers. As to primary insurers, California law is settled that a defense based on an insured's failure to give timely notice requires the insurer to prove that it suffered substantial prejudice. *Pitzer College v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 101 (2019). However, the legal requirements for an excess insurer to establish a late notice defense have never been considered or determined by the California Supreme Court. Therefore, when evaluating Home Depot's untimely notice to National Union, the Court should refer to "intermediate appellate court

decisions, statutes, and decisions from other jurisdictions as interpretive aids." *Gravquick A/S*, 323 F.3d at 1222.

One California court of appeal decision has directly addressed the issue of late notice to excess insurers: *Providence Washington Ins. Co. v. Container Freight, Inc.*, 68 Cal. Rptr. 2d 776 (1997) (depublished).[2] In *Providence*, the California court of appeal held that "an excess carrier defending on the ground of late notice is not bound by the 'notice-prejudice' rule." *Id*. at 783. The *Providence* court reasoned that the one right that the excess insurer has (*i.e.*, the essential purpose of the notice provision) is to allow it to "step in and settle the case directly with the injured party". *Id. citing Diamond Heights Assn. v. Nat. Am. Ins. Co.*, 227 Cal. App. 3d 563 (1991)).

Accordingly, the court in *Providence* held that, when the timeliness of notice is challenged by an excess carrier, "the fundamental issue is whether the insured acted reasonably in withholding notice until the date it was actually given." *Id.* at 784. The court stated that all of the facts and circumstances should be considered including any prejudice to the excess carrier. *Id.* ("The greater the prejudice to the excess insurer, the more likely it is that the insured's delay was unreasonable, but the absence of demonstrable prejudice does not in itself defeat the defense of untimely notice where the failure to give timely notice was flagrantly unreasonable under the circumstances.")

*Providence* is the only California court of appeal case to squarely address the issue and is persuasive authority.  Therefore, the salient inquiry is whether Home Depot acted unreasonably in failing to provide notice to National Union.

/ / /

---

[2] As no published California opinion controls the issue of late notice to excess insurers, this Court may consider *Providence*, an unpublished opinion, as persuasive authority. *See Am. Zurich Ins. Co. v. Country Villa Serv.* Corp., No. 2:14-CV-03779-RSWL, 2015 WL 4163008, at *4 (C.D. Cal. July 9, 2015), citing *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir.2003) (stating that the court "may consider unpublished state decisions, even though such opinions have no precedential value" and that unpublished opinions, "while certainly not dispositive of how the California Supreme Court would rule," may still "lend[ ] support" to a certain position regarding California law).

### 2. Home Depot Was Required to Notify National Union of the Lawsuit as Soon as Practicable And Failed To Do So

Condition G. in the National Union Policy lays out several duties of the insured in the event of an occurrence, claim or suit. First, "You must see to it that we are notified as soon as practicable of an Occurrence that may result in a claim or Suit under this policy." Second, "If a claim is made or Suit is brought against any Insured which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable." Home Depot failed to satisfy either condition.

The undisputed facts regarding Home Depot's late notice include: (1) Home Depot knew by November 19, 2013 that Angle went to the ER and may have suffered nerve damage; (2) by June 2, 2014 Home Depot knew Angle alleged permanent injuries and contended both Home Depot and Woodstream are liable pursuant to a products liability theory; (3) the Lawsuit's November 4, 2015 Complaint contained a products liability cause of action that alleged the product was defective; (4) Home Depot's defense counsel recommended the Lawsuit be tendered to Woodstream and its carriers in March 2016; (5) Home Depot failed, over the course of three years, to take reasonable steps to determine the extent of Angle's injuries, such as performing a basic IME; and (6) Home Depot waited until discovery was closed and trial was merely days away, three and a half years after it was notified of the Angle claim to put Twin City and National Union on notice. Such undisputed facts overwhelmingly support a finding that Home Depot acted unreasonably in the face of Angle's products liability claim.

Home Depot cannot maintain that providing notice on May 18, 2017 was "as soon as practicable" or otherwise reasonable because it did not know until then that the Lawsuit involved a products liability and/or that the Angle Claim was reasonably likely to exceed $1 million. Home Depot's mishandling of the defense created the dire circumstances in which Home Depot (1) undervalued the case at up to $100,000 in April 2017, (2) retained new defense counsel that days later valued the case up to

$6 million on May 8, 2017, and (3) declared on May 9, 2017 "the fact that we don't have a defense is more than troubling." Only then did Home Depot attempt to shove all financial responsibility for its own mistakes onto Twin City and National Union. Such unreasonably late notice is the opposite of "as soon as practicable."

### 3. Home Depot's Unreasonably Late Notice Prejudiced National Union by Precluding any Defense of the Product

Further supporting a finding that Home Depot acted unreasonably is the fact that Home Depot's failure to provide notice for over three years all but guaranteed there was no defense to Angle's product defect allegations. Further, Home Depot severely undervalued the case and made several irreparable mistakes that increased the value of the case before National Union was put on notice. Home Depot's late notice was therefore severely prejudicial because neither National Union nor any of Woodstream's insurers was given an opportunity to defend the product defect claim. Rather, Home Depot chose to handle its own defense of the Lawsuit as a "core matter," which proved disastrous.

First, Home Depot declined to have any expert perform a physical examination of Angle, telling defense counsel it was "leery of an IME." When Home Depot's retained neurosurgeon, Scott Lederhaus M.D., was asked at deposition whether he was offering an opinion that Mr. Angle did not suffer a peripheral nerve injury as a result of the electrical shock, he stated "I don't know because I haven't seen him in an IME." JNL Decl., Ex. 50, 20:10-14. Angle literally accentuated this fact in his arbitration brief, asserting in bold that "Home Depot did not have Mr. Angle examined by a doctor." JNL Decl., Ex. 27, p.8. Without an IME of Angle, Home Depot was unable to rebut Dr. Morse's testimony that Angle's alleged injuries were caused by the incident. Without an IME, the value of the case grew exponentially.

Second, Home Depot purposely failed to obtain and depose key experts. Home Depot designated electrical engineer Phillip Wheeler without knowing his opinions

regarding the Lawsuit. When Mr. Wheeler agreed with Angle's expert Dr. Morse that the Rat Trap could cause Angle's injuries, Home Depot withdrew Wheeler as an expert, and did not replace him. Home Depot also had no expert to contradict Dr. Morse's testimony that the Rat Trap was defectively designed. Further, Home Depot neglected to depose Angle's neuropsychologist and economist and never designated an expert to rebut the neuropsychologist. Once Home Depot understood it was without the appropriate experts or rebuttal evidence, the value of the case continued to grow.

In addition, Home Depot failed to timely notify not only National Union, but also Woodstream and Twin City. Neither the Rat Trap manufacturer nor its primary insurer were aware of the Angle Claim until days before trial and after all discovery had closed. As a result, there was no one to defend the Rat Trap, which Angle had alleged – since June 2, 2014 – was defective. Other than paying lip service in various briefs, Home Depot certainly did not present a substantive defense of the Rat Trap. By preventing the primary insurer, Twin City, from mounting an effective defense of the product defect allegations, Home Depot also prevented National Union from relying on what may have otherwise been an adequate defense of the Rat Trap.

Notably, Home Depot's abject failure to defend the product, coupled with its late notice, effectively deprived National Union from asserting Exclusion H in the vendor's endorsement, which precludes coverage for bodily injury arising out of the sole negligence of the vendor. If timely notified in June 2014 or when Home Depot was served with the Lawsuit in February 2016, National Union would have ensured a defense to the design defect allegations. Instead, after realizing that "we don't have a defense," Home Depot conspired to engineer coverage under the National Union policy by continuing to not defend the product. Indeed, Home Depot confided with defense counsel that "[we] may want some of that testimony about it being a bad design" because "[a]ssuming there is no tender, we may all need to [sic] how to use design/safety to our advantage." JNL Decl., Ex. 35, p.2. As Home Depot admittedly

provided no defense to the design defect allegations, it is no surprise that the arbitrator found the Rat Trap was defective and Angle's injuries were then not the result of Home Depot's "sole negligence," thereby precluding application of Exclusion H.  The prejudice to National Union was seemingly by design.

Therefore, for all the reasons discussed above, Home Depot's unreasonable withholding of notice until May 18, 2017 precludes coverage.

### 4.     Home Depot's Late Notice Substantially Prejudiced National Union as a Matter of Law

Even if the Court disregards the persuasive authority of *Providence* and follows California's substantial prejudice requirement for primary policies, coverage is still precluded under the National Union Policy because, under the circumstances described above, prejudice to National Union should be presumed as a matter of law.

Prejudice may be presumed as a matter of law where it "naturally, inherently and necessarily exist[s]." *Northwestern Title Sec. Co. v. Flack*, 6 Cal. App. 3d 134, 141 (Ct. App. 1970) (citing *Valladao v. Fireman's Fund Indem. Co.*, 13 Cal.2d 322, 333–34 (1939)). Where prejudice is presumed as a matter of law based on the facts of a case, a showing that the trier of fact would have found in the prejudiced's favor is not required. *See*, *e.g.*, *Colonial Gas Energy System v. Unigard Mut. Ins. Co.*, 441 F. Supp. 765, 770 (N.D. Cal. 1977) (finding substantial prejudice, as a matter of law, where plaintiff altered and/or destroyed evidence)*; Cybernet Ventures, Inc. v. Hartford Ins. Co.,* 168 Fed. Appx. 850, 852 (9th Cir. 2006) (court did not analyze whether the trier of fact in an infringement action would likely have found for the insured, had the insurer's counsel been accepted, but instead concluded that the insured's refusal to cooperate in and of itself substantially prejudiced the insurer); *Travelers Prop. v. Centex Homes*, 2011 WL 1225982 at *7 (N.D. Cal., Apr. 1, 2011) (same); *Century Surety Co. v. Visemer De Gelt, LLC*, No. 211CV4222ODWFFMX, 2012 WL 13008730, at *5 (C.D. Cal. Feb. 17, 2012) (same).

/ / /

National Union was substantially prejudiced not just by Home Depot's outrageous three year delay in providing notice, but also because Home Depot (1) declined to have its experts perform any physical examination of Angle, (2) neglected to retain an expert to defend the product defect allegations against the Rat Trap, (3) failed to depose key plaintiff experts, and (4) effectively sabotaged the defense of the Rat Trap by also failing to notify Woodstream and Twin City, leaving only Home Depot to defend the design of the Rat Trap (which it failed to do). Home Depot's disregard of National Union's rights under the National Union Policy "naturally, inherently and necessarily" prejudiced National Union, and should be presumed as a matter of law. *Northwestern Title*, 6 Cal. App. 3d at 141.

## D.   Absent Breach of Contract, There Is No Bad Faith

To establish bad faith, Home Depot must prove (1) a breach of the insurance contract through the withholding of benefits, and (2) that the reason for withholding benefits was unreasonable or without proper cause. *Waller,* 11 Cal. 4th at 35-36; *Love v. Fire Ins. Exch*., 221 Cal. App. 3d 1136, 1151-1153 (1990). Where there is no breach of contract, there can be no breach of the implied covenant of good faith and fair dealing. *Waller*, 11 Cal. 4th at 36; *Love,* 221 Cal. App. 3d at 1153 ("bad faith claim cannot be maintained unless policy benefits are due"). Since National Union has no duty to indemnify Home Depot for the Angle Claim, there has been no breach of contract and, therefore, no bad faith.

## V.   ALTERNATIVELY, SUMMARY ADJUDICATION SHOULD BE GRANTED IN NATIONAL UNION'S FAVOR

Alternatively, if summary judgement is not granted, National Union requests the following rulings: (1) there is no bad faith as National Union's denial was reasonable given Home Depot's last-minute notice of the Angle Claim, failure to remove batteries from the Rat Trap, and valuation of the Angle Claim; and (2) Home Depot cannot maintain its punitive damages claim because National Union did not act with malice, oppression, or fraud.

## A.   No Bad Faith Exists Because (1) There is a Genuine Dispute as to Coverage and (2) National Union's Conduct Was Reasonable

Even if there were evidence of a breach of contract, which there is not, National Union acted reasonably and denied coverage based on a genuine dispute. See *Chateau Chamberay Homeowners Assn. v. Associated Int. Ins. Co.*, 90 Cal. App. 4th 336, 346-47 (2001) (bad faith requires unreasonable and improper conduct in withholding policy benefits).

First, a bad faith claim can be dismissed on summary judgment if the defendant can show a genuine dispute as to coverage. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). An insurer does not act in bad faith in denying policy benefits when a genuine dispute exists as to whether the policy affords coverage. *See SEMX Corp. v. Federal Ins. Co.*, 398 F. Supp. 2d 1103, 1123-24 (C.D. Cal. 2005) (although insurer took a coverage position ultimately deemed incorrect, there was no bad faith because a "legitimate dispute" existed as to insurer's obligations and the insurer's coverage position was "not unreasonable"); *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F. 3d 653, 656 (9th Cir. 1994) (same).

There is no question that a "genuine dispute" existed here. National Union's denial of coverage based upon (1) the repackaging exclusion in the vendors endorsement precludes coverage, and (2) and late notice as described above was clearly reasonable under the circumstances. National Union also reserved its right to deny coverage under Exclusions (e) and (h). As discussed above, the facts available to National Union, the case law and the policy language clearly supports National Union's coverage determination. Even if the determination is ultimately found to be incorrect, so long as a "legitimate dispute" existed as to its obligations under the policy, National Union's coverage position was "not unreasonable." *SEMX,* 398 F. Supp. 2d at 1123-24.

Second, bad faith does not lie where an insurer's conduct was reasonable as a matter of law. *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160, 1166 (9th

Cir.1995) (emphasizing there can be no bad faith if the insurer acted reasonably); *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 977 (2003) (as long as the insurer's coverage decision was reasonable, it will have no liability for bad faith). Here, National Union timely investigated the Angle Claim, reserved rights, and asserted a reasonable coverage position following the Arbitration. National Union's conduct, unlike Home Depot's, was reasonable as a matter of law.

**B.    National Union Did Not Act With Oppression, Fraud, or Malice**

Punitive or exemplary damages require clear and convincing evidence of "oppression, fraud, or malice," which are defined in Cal. Civ. Code § 3294 as follows: "(1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others; (2) 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; (3) 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Home Depot's high burden of clear and convincing evidence must be taken into account in ruling on a summary judgment motion. *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1118 (2001).

Here, National Union's conduct does not come close to conduct that could support the imposition of punitive damages. This would be true even if National Union's coverage determination is ultimately found to be incorrect and/or it is found to have acted in bad faith. Even a finding of insurer bad faith, without more, does not justify punitive damages. *Basich,* 87 Cal. App. 4th at 1118. Instead, an insurer's bad faith must be accompanied by clear and convincing evidence of malice, fraud, or oppression in order to justify an award of punitive damages. *See, e.g. Gaylord v. Nationwide Mut. Ins. Co.*, 776 F. Supp. 2d 1101, 1127-1128 (E.D. Cal. 2011)

(punitive damages not warranted where insurer investigated the claim and reasonably interpreted the policy). Simple breach of contract, "no matter how willful and hence, tortious, is not a ground for punitive damages." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1286 (1994). This case is merely one of disputed contract interpretation between two sophisticated corporations.

Further, as discussed above, National Union properly investigated, reserved rights, and asserted a reasonable coverage position. No evidence of oppressive, fraudulent or malicious conduct has been proven. When, as here, an insurer's denial of coverage "does not reach the level of despicability found in cases in which punitive damages were found to be proper," and "is supported by a reasonable, good faith argument, [it] does not form the basis for punitive damages." *Neumeyer v. Wawanesa Gen Ins. Co.*, No. 14CV181-MMA RBB, 2015 WL 1924981, at *26 (S.D. Cal. April 24, 2015); see *Slottow v. Am. Cas. Co.*, 10 F.3d 1355, 1361 (9th Cir. 1993).

## VI.   CONCLUSION

The Angle Claim is not covered under the National Union Policy because Home Depot (1) sold a repackaged Rat Trap; (2) violated its agreement and custom and practice with Woodstream by failing to destroy and seek credit for the returned Rat Trap; (3) violated its own policy and usual practice by failing to properly inspect the Rat Trap before placing it back on the sales floor; and (4) provided unreasonably late notice of the Angle Claim and prejudiced National Union as a matter of law. Therefore, National Union's Motion for Summary Judgment should be granted. In the alternative, the Court should grant summary adjudication in favor of National Union on Home Depot's bad faith and punitive damages claims.

Dated: April 30, 2021

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP

By:_____*/s/ Jeffrey N. Labovitch*_____
Matthew J. Fink
Jeffrey N. Labovitch
Chris J. Middleton
Attorneys for Defendant National Union